## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | | |
|---|---|---|
| **HALEY COLE,** | ) | |
| | ) | |
| **Plaintiff,** | ) | **JURY TRIAL DEMANDED** |
| | ) | |
| **v.** | ) | |
| | ) | **CIVIL ACTION FILE** |
| **ACCENTURE, LLP** and | ) | **1:24-CV-01897-MHC-JKL** |
| **LAWRENCE CHRISTOPHER** | ) | |
| **YOUNG, ELLYN SHOOK,** and | ) | |
| **RYAN OAKES in their individual** | ) | **FIRST AMENDED COMPLAINT** |
| **and professional capacities,** | ) | |
| | ) | |
| **Defendants.** | ) | |

## FIRST AMENDED VERIFIED COMPLAINT FOR DAMAGES

NOW COMES Plaintiff Haley Cole ("Plaintiff Cole"), by and through the undersigned counsels of record, and brings this, their Verified Complaint for Damages against Accenture LLP, ("Defendant Accenture") and Lawrence Christopher Young ("Defendant Young" or "Mr. Young"), Ellyn Shook ("Defendant Shook" or "Ms. Shook"), and Ryan Oakes ("Defendant Oakes" or "Mr. Oakes") in their individually and professional capacities (collectively "the "Defendants") and shows the court as follows:

1

## PRELIMINARY STATEMENT

1.

*"To create a culture where harassment is abhorred, the tone must be set at the top. Leaders across an organization must not only exemplify the desired values but hold themselves and others accountable to a high standard."[1]* – Ellyn Shook, Chief Leadership & Human Resources Officer, Accenture LLP

*"Being courageous enough to have this conversation in the workplace is critical. Every individual needs to be able to talk about what they feel, what they need, what they experience and what they observe."[2]* – Ellyn Shook, Chief Leadership & Human Resources Officer, Accenture LLP

*"Transparency builds trust – and trust is an essential ingredient to overcome a predatory culture."[3]* – Ellyn Shook, Chief Leadership & Human Resources Officer, Accenture LLP

*"The bottom line is that sexual harassment and assault are criminal offenses. No one should be exempt from being held to an organization's commitment to protecting the rights of its employees. Performance should not be brought into the discussion. It's irrelevant – high performers can be fired for this."[4]* – Ellyn Shook, Chief Leadership & Human Resources Officer, Accenture LLP

*"Equality in principle must be matched by equality in practice. This should be on every leader's agenda."[5]* –Ellyn Shook, Chief Leadership & Human Resources Officer, Accenture LLP

---

[1] Shook, Ellyn. "Zero Tolerance." LinkedIn article, November 10, 2017
https://www.linkedin.com/pulse/zero-tolerance-ellyn-shook/ (accessed 2023), Page 3
[2] *Id.*
[3] *Id.*
[4] *Id.*
[5] *Id.*

*"We start with the bedrock principle that every human being is equally deserving of respect, dignity and the opportunity to succeed. These aren't just words to us – they guide how we work together."*[6] – Chad Jerdee, General Counsel and Chief Compliance Officer, Accenture LLP

*"As leaders, we have an obligation to ensure each person – she, he or they – feels safe, valued and able to show up every day as their authentic self."*[7] – Ellyn Shook, Chief Leadership & Human Resources Officer, Accenture LLP

2.

This case is about Plaintiff Haley Cole, a diligent and aspiring professional whose trust and vulnerability were mercilessly exploited by their employer, Accenture, and their supervisor, Lawrence Christopher Young.

3.

Over two grueling years, Plaintiff Cole endured a systematic and vile campaign of grooming and sexual harassment, orchestrated under the guise of mentorship and professional development. Contrary to the lofty ideals and compassionate workplace culture purported by Accenture and its senior leadership, the reality for Plaintiff Cole was one of betrayal and profound injustice.

---

[6] *Id.*

[7] *Id.* at pg. 4.

4.

This case transcends the reprehensible actions of a single sexual predator; it lays bare the complicity of Accenture, an international organization that employs approximately 742,000 employees worldwide. Rather than safeguarding its employee's dignity, Accenture chose to shield a sexual perpetrator under its employ.

5.

After Plaintiff Cole courageously came forward with Defendant Young's sexual grooming and harassment, Accenture's actions—or lack thereof— did not just fail them professionally; Accenture degraded their humanity day by day, casting a long shadow over them personally, mentally, and physically. This lawsuit seeks justice for Plaintiff Haley Cole and stands as a stark reminder of the systematic failures that allow sexual predators to flourish in corporate corridors, shielded by the very structures that should—and often claim—to hold them accountable.

6.

This is an action for monetary damages against Defendants Accenture, Ellyn Shook, Ryan Oakes, and Lawrence Young for gender discrimination and sexually hostile work environment in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000e, et seq. ("Title VII") and related state law claims for battery, invasion of privacy, intentional infliction of emotion distress, negligent infliction

of emotional distress, negligent hiring, training, supervision, retention, and punitive damages.

## **PARTIES**

7.

Plaintiff Haley Cole is a natural person and resident of the State of Georgia. Plaintiff Cole is an autistic, non-binary individual who was assigned female at birth and was socialized as a female throughout their upbringing and young adulthood. Plaintiff Cole's pronouns are "they / them / theirs." Plaintiff Cole submits themselves to the jurisdiction of this court by filing this Verified Complaint. Plaintiff is a former employee of Accenture LLP and at all relevant times herein, Plaintiff met the definition of an "employee" under all relevant federal and common law and statutes.

8.

Accenture, LLP, formally Andersen Consulting, once a part of the now failed Arthur Andersen, LLP, is a foreign corporation licensed to do business in the State of Georgia. Accenture may be served through its designated representative for Service of Process: CT Corporation System, 1201 Peachtree Street, N.E., Atlanta, GA 30361 or at its Corporate Office at 161 N. Clark Street, Chicago, IL 60601. Accenture is responsible for the actions of its employees, agents, and representatives acting on its behalf through the legal doctrines of respondeat superior and vicarious

liability.

9.

Lawrence Christopher Young is a natural person and resident of the State of Georgia. Defendant Young is a former employee of Accenture and is a resident of the State of Georgia. At all times herein, Defendant Young met the definition of an employee and agent of Accenture LLP under all relevant common law and statutes. Defendant Young's primary residence is in Marietta, Georgia where he frequently held work sessions with the team that worked with and directly reported to him, including Plaintiff Cole. Defendant Young may be served with process at Marietta, Georgia.

10.

Ellyn Shook is a current employee at Accenture LLP, and upon information and belief, is a resident of the State of New York. Ms. Shook has worked at Accenture for nearly 30 years and at the time of this filing, Ms. Shook's title is Chief Leadership & Human Resources Officer. Ms. Shook is also a member of Accenture's Global Management Committee and Investment Committee. At all times herein, Ms. Shook met the definition of an employee and agent of Accenture LLP under all relevant common law and statutes.  Defendant Shook may be served with process at New York, New York.

11.

Ryan Oakes is a current employee at Accenture LLP and, upon information and belief, is a resident of the State of Connecticut. Mr. Oakes has worked at Accenture for slightly less than 30 years and at the time of this filing, Mr. Oakes is the Chair of Accenture's Global Public Health and Public Services Industry practice group. Mr. Oakes is also a member of Accenture's Global Management Committee. At all times herein, Defendant Oakes met the definition of an employee and agent of Accenture LLP under all relevant common law and statutes.  Defendant Oakes may be served with process at Guilford, Connecticut.

## SUBJECT MATTER JURISDICTION

12.

Federal jurisdiction is proper in this Court pursuant to 28 U.S.C. §§ 1331 and 1332, as this action violations of Title VII and therefore raises federal questions regarding the deprivation and violations of Plaintiff's rights.  Federal jurisdiction is also proper in this Court pursuant to 28 U.S.C.A. § 1332, as one or more parties to this case are citizens of different states. Specifically, as noted above, Plaintiff is a resident of the state of Georgia, while one or more of the named Defendants are citizens of other states as defined by § 1332 (c)(1), and the amount in controversy, excluding costs and interest, exceeds $75,000.00. The

Court has supplemental jurisdiction over the related state law claims pursuant to 28 U.S.C. § 1367(a).

## PERSONAL JURISDICTION

13.

This Court has jurisdiction over the person of each of the Defendants regarding pursuant to the Georgia Long-Arm statute, O.C.G.A. § 9-10-91, because all named Defendants have done acts, including, one or more of the following:

(i) transacted "any business" within the state of Georgia within the meaning of O.C.G.A. § 9-10-91(1);

(ii) committed a tortious act in the state of Georgia within the meaning of O.C.G.A. § 9-10-91(2); or

(iii) conspired with other Defendants, which have themselves done acts sufficient to bring them and their co-conspirators within the long-arm jurisdiction of Georgia courts pursuant to O.C.G.A. § 9-10-91 and applicable law.

14.

Exercising personal jurisdiction over all named Defendants would not offend traditional notions of fair play and substantial justice. When Defendants Accenture, Young, Shook, and Oakes solicited, retained, and then benefitted from Plaintiff

Cole's professional services, they should have anticipated that any dispute arising from those contacts could expose them to personal jurisdiction in Georgia. *See Weinstein Grp., Inc. v. O'Neill & Partners, LLC*, 415 F. Supp. 3d 1167, 1174 (N.D. Ga. 2019) (When it solicited, retained, and then benefitted from and paid for the services of a Georgia placement services corporation, it should have anticipated that a dispute arising from those contacts could expose it to personal jurisdiction here.) *See also Burger King*, 471 U.S. at 473, 105 S.Ct. 2174 ("A state generally has a 'manifest interest' in providing its residents with a convenient forum for redressing injuries inflicted by out-of-state actors.").

## VENUE:

### 15.

Pursuant to 28 U.S.C. §§1391(a)(2) and (b)(2), venue is proper in the Northern District of Georgia because a substantial part of the events or omissions giving rise to this action, including the unlawful employment practices and tortious conduct alleged herein, occurred in and around Atlanta, Georgia.

## ADMINISTRATIVE PREREQUISITES

### 16.

Plaintiff Cole timely filed a Charge of Discrimination with the Equal Employment Opportunity Commission (EEOC) on December 29, 2023, against

Defendant Accenture alleging violations of Title VII.[8]

17.

On March 21, 2024, the EEOC issued a Notice of Right to Sue to Plaintiff Cole entitling an action to be commenced within ninety (90) days of receipt of that notice.[9]

18.

This Complaint is being commenced within ninety (90) days of receipt of the Notice of Right to Sue.  Accordingly, all prerequisites to the filing of this suit have been met.

## FACTUAL ALLEGATIONS

19.

Plaintiff Cole graduated from Georgia Institute of Technology in December 2015 with a Bachelor of Science degree in Industrial Engineering.

20.

Plaintiff Cole joined Accenture on May 20, 2016, as a Management Consulting Analyst. Over the course of the next seven years, Plaintiff Cole received

---

[8] **Exhibit A**, Haley Cole EEOC Charge of Discrimination, dated December 29, 2023.
[9] **Exhibit B**, EEOC Notice of Right to Sue, dated March 21, 2024.

several promotions, raises, and bonuses due to their superior work performance and reputation for excellence within the organization.

21.

During Accenture's recruitment of Georgia Tech students, it intentionally holds itself out as being a "safe place" for all marginalized communities, including members of the LGBTQIA+ community. One of many examples is the quote below, from Accenture's Facebook page.

> *"When you must hide your authentic self, the mental, emotional and physical toll can be staggering. That's why it's so important that we honor International Day Against Homophobia, Transphobia and Biphobia and actively support the LGBTIQ+ community to live visibly and authentically."*—Accenture Facebook Post May 17, 2022.[10]

22.

Over the next seven years of Plaintiff Cole's employment, Accenture continued to hold itself out as a gold standard for global corporate employers with an outspoken commitment to a diverse, inclusive workplace - a safe space with robust mental health resources to support its employees to manage their mental health in the workplace.

---

[10] https://www.facebook.com/accenture/videos/377695177637100/ Facebook Post on Accenture Page (dated May 17, 2022) (accessed April 22, 2024).

23.

According to People Magazine, Accenture is one of the "World's Best Places to Work." According to their website, Accenture says:

> "We recognize that some people come to Accenture having faced obstacles as an aspect of their identity or lived experience. At Accenture, we are committed to harness these perspectives and ensure that all of our people have the opportunity to thrive and unlock their full potential."[11]

> "For more than 20 years, we have been supporting LGBTIQ+ inclusion through our policies and practices, and we are continuing to work to provide more for our people…"[12]

24.

Because Plaintiff Cole believed Accenture's commitment to support them as an individual managing their mental health and as an individual in the LGBTQIA+ community, Plaintiff Cole actively participated in the Pride Employee Resource Group (ERG) in Accenture's Atlanta office and even participated in several on-campus recruiting events at Georgia Tech with the Accenture Pride ERG.

---

[11] https://www.accenture.com/us-en/about/inclusion-diversity-index (accessed April 22, 2024).

[12] https://www.accenture.com/us-en/about/inclusion-diversity/lesbian-gay-bisexual-transgender (accessed April 22, 2024).

25.

As direct result of Accenture's marketing representations, Plaintiff Cole openly and regularly shared their mental health challenges, sexual orientation, and gender identity with their co-workers, supervisors, clients, and even some of the students recruited and hired from Georgia Tech.

26.

Plaintiff Cole first began therapy and counseling with a licensed counselor during their second year at Georgia Tech. From that point forward, Plaintiff Cole managed their mental health continuously and with continued success throughout their young adulthood.

27.

Prior to the deplorable grooming and sexual harassment which is the subject of this Complaint, Plaintiff Cole had reached a documented and impressive level of stability that was expected to continue to improve over time.

28.

Plaintiff Cole, having personally faced the challenges of mental illness, is a fervent supporter of mental health and well-being initiatives within the Accenture workplace. They have actively advised several colleagues on how to utilize the

mental health resources provided by Accenture, guiding them towards helpful options such as medical leaves of absence.

29.

Plaintiff Cole's early life was marked by concealment of their true self, a necessary shield against the unsafe environments of family and school. As an adult, they have worked diligently to unlearn this conditioning and to present their genuine self to the world. Having experienced both previous and ongoing rejection from their immediate family due to their sexual orientation and gender identity, Plaintiff Cole holds a deep-seated belief in the paramount importance of living authentically.

30.

Plaintiff Cole has received praise from both Accenture supervisors and external clients for their commitment to authenticity in the workplace. On at least one occasion, Plaintiff Cole's transparency regarding their mental health journey directly contributed to Accenture securing a new mental health project for a large existing client, so much so that some of the key stakeholders felt compelled to share this with Plaintiff Cole after the strategy workshop.

31.

Plaintiff Cole was excited about consulting on projects that could improve access and outcomes in the mental health space, and they looked forward to progressing as a high-ranking consultant until their eventual retirement.

**Defendant Lawrence Christopher Young Was a Highly Regarded Senior Leader at Accenture**

32.

Upon information and belief, Mr. Young joined Accenture after serving as the Deputy Chief of Staff for the United States Department of Agriculture. His first position with Accenture was as a North America Public Service Strategy & Consulting Senior Manager. He obtained his Juris Doctor (JD) degree from the University of Georgia School Law in 2006 and his Bachelor of Science (BS) degree in History from Georgia Institute of Technology in 2000, both with the highest Latin honors.

33.

Upon information and belief, Mr. Young was promoted to increasingly important senior roles in leadership during his tenure with Accenture. Among other roles, he was Co-Chief of Staff for south market unit leader Marty Rodgers, the Atlanta Office Corporate Citizenship Executive Sponsor, and the Georgia Public

Service Strategy and Consulting Lead, which was the position he held until he left Accenture in January 2023.

34.

Upon information and belief, Mr. Young is an ordained minister and an associate pastor in a metropolitan Atlanta congregation.[13] Upon information and belief, Mr. Young attends Mt. Paran Church of God in Atlanta, Georgia and is a proud, outspoken member of their choir.

35.

Upon information and belief, Mr. Young is a current board member at the Protocol and Diplomacy International, Protocol Officers Association. He is a Past President of the board, and presently the Chair of the Governance and Ethics Committee. According to their website[14], the charge of this non-profit is as follows:

> "Protocol officers work in government, corporations, and universities to **implement international codes of conduct and facilitate decision-making between business and world leaders**. Founded in 2002, Protocol & Diplomacy International – Protocol Officers Association (PDI-POA) is a nonprofit that supports protocol officers by providing training and

---

[13] 2024 Prosperity Through Trade Luncheon, May 2, 2024, Event Summary https://www.globalatlanta.com/event/2024-prosperity-through-trade-luncheon/ (accessed April 25, 2024).
[14] https://www.protocolinternational.org/ (accessed April 19, 2024).

continued education forums, networking opportunities, and mentorship." (emphasis added)

36.

As of April 18, 2024, the Protocol website list Mr. Young's bio as follows:

"After a long, successful career in government, protocol, politics, and business, **Chris is presently on a path toward ministerial ordination and full-time pastoral work**. His prior experience includes **services as a managing director in Accenture's state and local government strategy and consulting practice**; Deputy Chief of Staff, U.S. Department of Agriculture; Executive Director of a United Nations training arm for local governments in the developing world; Executive Director of The Protocol School of Washington; and Chief of Protocol and Director of International Affairs for the State of Georgia. He earned his bachelor's degree from Georgia Tech and his law degree from the University of Georgia. He is set to finish his **Masters in Ministry at Richmont and thereafter begin a D.Min. program.**

Chris has been a member of PDI-POA since 2005.  He was a voting Director from 2007 to 2014. He became PDI-POA's youngest President in 2008 and continued that service through 2014, ushering in an era of unprecedented growth. In 2014, the Association honored him with the Ann Beard Board of Directors Award.  In addition to his present duties, he has also served the Association as First Vice President and Chair of the 2016 Atlanta Forum." (emphasis added).

**Plaintiff Cole Started Reporting to Mr. Young After Four Years Working at Accenture**

37.

In January 2020, Plaintiff started reporting to Mr. Young as their Managing Director and Career Counselor.

38.

At the time of this reporting transition, Plaintiff Cole was 26 years of age and, upon information and belief Mr. Young was 42 years of age.

39.

From January 2020 until December 2022, Mr. Young served in these dual roles, which gave him almost complete control over Plaintiff Cole's professional development and success at Accenture.

40.

Notwithstanding the fact that Defendant Ellyn Shook, Chief Human Resources Officer has publicly stated that Accenture make every effort for the role of direct supervisor to be a different person than the employee's Career Counselor. According to Defendant Ellyn Shook,

> *"At Accenture each of our 425,000 people has **a career counselor –
> the majority of which are not their direct supervisor** – to encourage*

*a more open and trusting environment to share both aspirations and concerns. We encourage frequent touchpoints according to a rhythm that is set by the employee. Ultimately this helps to build stronger relationships and opportunities for people to open up. It's also critical to have a hotline where people can raise concerns anonymously if they do not feel comfortable sharing with anyone else."[15]* (emphasis added).

41.

As Managing Director, Career Counselor, and direct supervisor for Plaintiff Cole, Mr. Young was responsible for guiding Plaintiff Cole's career progression at Accenture, including but not limited to recommendations for their promotion, salary increases, performance bonuses, and other professional development opportunities at Accenture.

42.

In June 2021, Mr. Young personally informed Plaintiff Cole that they were promoted to the position of Manager, as well as their annual performance achievement outcomes in 2020, 2021 and 2022.

43.

From 2020 onward, Plaintiff Cole met with Mr. Young no less than two times per week. For projects led by Mr. Young, he was Plaintiff Cole's direct project

---

[15] Shook, Ellyn. "Zero Tolerance." LinkedIn article, November 10, 2017 https://www.linkedin.com/pulse/zero-tolerance-ellyn-shook/ (accessed 2023).

supervisor, and he was in constant communication with Plaintiff Cole on an almost daily basis. While Plaintiff Cole completed most of their work remotely from home, when there was a need to meet in person, Mr. Young frequently hosted those meetings in his home located in Marietta, Georgia.

44.

The nature of these in-person meetings at Mr. Young's home ranged from project-specific group working sessions, to forecasting and strategy sessions, to team building.

45.

Defendant Young hosted "Friendsgiving" potlucks in years 2019, 2020, 2021, and 2022. Every year, Mr. Young invited Plaintiff Cole to come to his home early and before everyone else to help him prepare for the event. This ensure that he would have personal time with Plaintiff Cole and to reinforce the special and personal relationship.

**Mr. Young Groomed and Sexually Harassed Plaintiff Cole**

46.

In addition to his formalized control over Plaintiff Cole's career path, Mr. Young frequently suggested and alluded to a continued life partnership between

Plaintiff Cole and himself in various forms, which included both Accenture specific projects as well as Mr. Young's post-Accenture endeavors.

47.

On at least one occasion Mr. Young confided to Plaintiff Cole that he planned to run for President of the United States and told Plaintiff Cole that he expected them to join him on that journey because he needed people who he could trust and rely on.

48.

On multiple occasions, between December 2020 and January 2023, Mr. Young referred to Plaintiff Cole in writing, emails, texts, and in in-person meets with pet names, including "Doodle Bug" and "Little Sister."

49.

On or around October 16, 2020, Mr. Young sent the following text to Plaintiff Cole:

> *"There's a part of me that also thinks that you and I don't even realize how much our lives will be intertwined as life marches along… Thank you for being my partner in joy."*

*50.*

On or around June 2, 2021, Mr. Young asked Plaintiff Cole to work from his home from 11 am until 2pm because he had an offsite appointment at the same time as a scheduled an air conditioning repair at the house. Plaintiff Cole agreed because they felt obligated to do so.

51.

As time progressed Mr. Young's text messages became increasingly personal and sexual in nature. Mr. Young began texting Plaintiff Cole multiple times per day about his new romantic partner.

52.

Mr. Young sent Plaintiff Cole numerous personal and professional text messages throughout the workday. The subject matter of Defendant Young's text messages to Plaintiff Cole ranged between purely work-related discussions, Plaintiff's mental health challenges, and included many discussions about Defendant Young's romantic life, including sexually explicit descriptions of what he did with his male partner.

53.

Mr. Young made a special point to tell Plaintiff Cole that they were the only person he could talk to about his "secret lover" because he was not openly gay in his professional environment.

54.

Around October 1, 2020, Mr. Young sent approximately 50 text messages to Plaintiff Cole about his clandestine relationship with a man. In these messages, he expressed gratitude towards Plaintiff Cole for their support of his relationship and conveyed intentions of having Plaintiff Cole be a part of his life. Excerpts from this communication are below:

*"he also believes in me so much he thinks I ought to run for public office"*

*"who said I wouldn't bring you along?"*

*"I did tell him on the beach in massachusetts... i said, if i ever go down this road, you do realize it will be harder on you than me?"*

*"right now I'm concentrating less on that"*

*"Got someone else who demands my attention"*

*"he's kinda shy hehehe"*

*"he would probably be mortified if he knew I shared so much with you"*

*"although he's becoming bolder"*

*"and this boy loves building the suspense"*

*"you're sweet to indulge me".*

*"We got in deep last night"*

*"but we both agree that we can't see a future without the other"*

*"I played the piano and sang for him"*

*"We talked about the velocity with which this is happening. And we're ok with it."*

*"He knows you know"*

*"I couldn't help but share my joy"*

*"We're not calling it 'it' yet. But we're close. Though we did refer to ourselves as a couple multiple times"*

*"do you know the song La Vie en Rose?"*

*"I sang it to him in French" "And then in English. While playing it"*

*"Haley. I'm lost in him fully."*

*"He and I had a 2 year run up"*

*"We talked about that last night. Neither of us thinks this would have happened if we had rushed into it"*

*"That. Boy. Loves. Me."*

*"Oh Haley. I love you and your friendship"*

*"I don't have words for how much you mean"*

*"Funny how life works"*

*"he calls me his magnificent magnet"*

*"2.5 hours hehe"*

*"but we've already been texting"*

*"There's a part of me that also thinks you and I don't even realize how much our lives will be intertwined as life marches on"*

*"I'm thinking grander"*

*"I can't wait for you to meet this beautiful human who has stolen my heart"*

55.

On or about November 22, 2021, at the annual "Friendsgiving" gathering at Mr. Young's residence in Marietta, Georgia, he inappropriately inquired whether Plaintiff Cole was clothed or unclothed during a sensory deprivation session for anxiety relief. Recognizing the inappropriateness of his question, Mr. Young quickly attempted to downplay his comment by assuring those present — all Accenture employees — that he saw Plaintiff Cole as a little sister. He then made a jest that no one should report his conduct to Accenture's HR department.

56.

On or around December 10, 2021, Mr. Young invited Plaintiff Cole and other colleagues from his team at Accenture to witness him sing at Mount Paran

church, located at in Atlanta, Georgia. In addition to coworkers, both of Plaintiff Cole's parents attended Mr. Young's choir performance.

**The January 1, 2022, Incident.**

57.

On January 1, 2022, Mr. Young's predatory and calculated sexual grooming of Plaintiff Cole escalated to an even more severe and outrageous misconduct.

58.

Defendant Young started sharing sexually intimate details of his relationship with his boyfriend and gradually started inquiring about Plaintiff Cole's romantic life, which included questions about their sexual orientation and preferences around sexual interests.  Specifically, Mr. Young sent Plaintiff Cole approximately 162 text messages.

> *"I think I just want to retire"*
>
> *"I've taken this holiday to renew in my mind what is actually important"*
>
> *"we will see if I can actually focus when it is time to work"*
>
> *"I'm guessing no"*
>
> *"I've taken up painting"*
>
> *"yes, and I've played a lot too"*

26

*"music"*

*"worked in the yards"*

*"cooked a great deal with my mother"*

*"read"*

*"and remembered that sex is a good thing HAHA"*

*"___ has been away and I was just so horny I couldn't stand it"*

*"so when we finally got together, the first session was about 4 hours"*

*"but we're having to navigate this physical separation and what that should and will mean"*

*"months is hard to handle"*

*"so lots of good discussions about what is and isn't permissible haha"*

*"you're my sister"*

*"we don't talk work here, we talk life"*

*"if we were physically co-located, I think we would be monogamous"*

*"or at the very least, if we introduced another person, it would be together"*

*"but this is all driven by being apart which isn't going to change anytime soon"*

*"and we're both horney AF"*

*"like our love isn't reduced"*

*"and since we both tend to identify as bi, it opens other doors"*

*"it's painful sometimes to be attracted to so many"*

*"i'm exploring the idea of being emotionally and spiritually connected to one person… but physically with many"*

*"idk" "could take so many forms"*

*"plus I like exploration, and boundaries get in the way"*

*"there's the odd thing - is being someone just to fulfill a physical need really and truly transactional if both (or all) parties agree and see it for what it is"*

*"haha, so a crazy last week of thought"*

*"he and I have talked about this for three years in different forms"*

*"i think we embrace our fluidity"*

*"lucky for me, he's a dirty boy"*

*"he's actually worse than I am"*

*"i've checked off just about every sexual box you can"*

*"I just think we should be open to intimacy in all its forms"*

*"and sometimes that leads us to things we wouldn't normally consider"*

*"now you know I'm dirty"*

*"it wouldn't have been good for us to know each other younger"*

*"I would've been a dangerous influence and/or enabler"*

*"now you know a whole new chapter of me"*

*"I'm in love with intimacy and physicality"*

*"And I think we let rules get in the way of it many times"*

*"I just have to be Careful because not everyone thinks or feels the same"*

*"I have to be careful who I'm this open with"*

*"Maybe one day now I'll invite you to one of my wild parties"*

*"I've never ever never ever invited anyone from work"*

*"Never"*

*"Like never"*

*"By the end everyone is usually naked and fucking"*

*"I can't even remotely believe I've opened this chapter with you"*

**Mr. Young Sent Plaintiff Cole Pornographic Text Messages of Himself**

59.

Following several hours of harassing and incessant text messages, Mr. Young started sending Plaintiff Cole more than a dozen pornographic images of himself his erect penis. He also sent a photo of his testicles and images of his penis from various angles.

60.

During this ordeal, Mr. Young recounted a time in the recent past when he hadn't masturbated for a month or more and when he finally did his "cum" shot up feet into the air and over his shoulder.

61.

Mr. Young told Plaintiff Cole that his balls were so big that it made his penis look small, while assuring Plaintiff Cole that his penis was in fact very large. Mr. Young asked Plaintiff Cole if they wanted to see his penis.

62.

Mr. Young then sent several images of his penis and testicles, while pressuring Plaintiff Cole to send him images in return. In total, Mr. Young send Plaintiff Cole approximately 20 images of his penis and testicles.

## **Mr. Young Forced Plaintiff Cole to Share Sexually Graphic Images of Themself**

63.

Almost an hour into this highly inappropriate, offensive, and sexually exploitive encounter, Mr. Young started pressuring Plaintiff Cole to send him sexually graphic images. Plaintiff Cole rebuffed his requests several times and in response, Mr. Young called Plaintiff Cole a "tease" and that they were "rude" for making him be patient.

64.

Under extreme duress and concerned about their career prospects at Accenture, Plaintiff Cole reluctantly consented to send Mr. Young personal images, worried that further refusals might jeopardize their professional advancement at Accenture.

65.

Mr. Young asked Plaintiff Cole if they preferred the term "cunt" or "pussy." He also said he wanted to "put his seed" in Plaintiff Cole and asked if they preferred being on the top or bottom during sexual intercourse.  He asked Plaintiff Cole to come to his home so he could carry out these fantasies, but Plaintiff Cole refused.

**Mr. Young Forced Plaintiff Cole to Watch Him Masturbate During a Facetime Live Video Call**

66.

Eventually the text exchange turned into a live Facetime video call. Mr. Young called Plaintiff Cole on Facetime and when Plaintiff Cole answered the call, Mr. Young's penis was exposed. He was in the process of masturbating to the images he forced Plaintiff Cole to send him.

67.

During the live video call, Mr. Young forced Plaintiff Cole to expose their genitals to aid in his masturbation. After several minutes of masturbating and coercing Plaintiff Cole to expose themself, Mr. Young ejaculated in view of the camera.

68.

Throughout the entirety of this horrifically outrageous sexual encounter on, Plaintiff Cole experienced intense confusion, humiliation, guilt, and shame. Eventually Plaintiff Cole experienced complete disassociation, and at times lost the ability to hear sound or see clearly.

69.

Plaintiff Cole struggled to process what was happening because Mr. Young employed so many calculated tactics to establish and maintain dominion and control over Plaintiff Cole.  He was everywhere in their workplace - both supervising their projects and controlling their career progression, salary, bonuses, and staffing, not to mention that he was the practice group leader for Accenture's Georgia team.

70.

At absolutely no point did Plaintiff Cole welcome any of his sexual advances nor did they have any desire to engage in a romantic or sexual relationship with Mr. Young.

**Mr. Young Continued to Sexually Harass Plaintiff Cole Until December 2022**

71.

In the days and weeks following the January 1, 2022, incident, while Plaintiff Cole attempted to move past what happened, Mr. Young continued the same inappropriate sexual harassment, while he simultaneously guided Plaintiff Cole's career, and managed their day-to-day work projects.

72.

On more than one occasion, Defendant Young invited Plaintiff Cole to his home when no one else would be there. Plaintiff Cole repeatedly refused because

they genuinely feared that Mr. Young would force them to engage in sexual activity if they were ever to be alone with him again, especially in his home.

73.

In or around February 2022, Plaintiff Cole started taking PTO days, because they were unable to make it through an entire workday without experiencing panic attacks, uncontrollable periods of crying, and intense and unbearable feelings of guilt, shame, embarrassment, and overwhelm.

74.

Throughout the month of February 2022, Plaintiff Cole's depression symptoms had become so severe that it started to negatively impact their work performance. Some of the mental injuries included severe mental fog, disassociation, reduced energy, and anhedonia.

75.

On Feb 3, 2022, Mr. Young sent Plaintiff Cole a text about hosting an event at his home, *"I will have the liability waiver… All part of my house rules…no suing lol… no leaving if you have had too much to drink… no pix."*

76.

On Feb 19, 2022, Mr. Young shared with Plaintiff Cole that he had a dream about them robbing a bank with him. On February 25, 2022, Mr. Young tried to

pressure Plaintiff Cole to come to his home to work in person with him by sharing that another co-worker had come by.

**Plaintiff Cole's Mental Health, Cognitive and Executive Functioning, as well as Work Performance Deteriorated Rapidly**

77.

In March 2022, Plaintiff Cole began experiencing severe suicidal ideations multiple times a week. Specifically, they were diagnosed and treated for major depression, anxiety, OCD, and ADHD. Each day they continued to work with and be supervised by Defendant Young inflicted additional and compounding trauma.

78.

On or around, March 2, 2022, Plaintiff Cole experienced intense anxiety both before and after an important client meeting. Throughout this presentation, Plaintiff Cole experienced dissociation and was ultimately unable to complete the presentation.

79.

On March 6, 2022, Plaintiff Cole told Mr. Young that they were struggling with their mental health in hopes that he would recognize the harmful impact he was having in their life. Rather than acknowledge the debilitating impact he had on their life, Mr. Young gaslit Plaintiff Cole and said *"You know I'd do anything for you! I want you to be in the best place for you. Period. Full stop."*

80.

On or around March 11, 2022, Plaintiff Cole was unable to complete a critical project deliverable due to their severely declining mental health.

81.

On or around April 1, 2022, Plaintiff Cole took the first of several intermittent leaves of absence under the FMLA due to the ongoing mental health impact of Mr. Young's sexual harassment.

82.

On or around May 23, 2022, Plaintiff Cole requested short term disability episodic leave for depression. However, on or around May 31, 2022, Plaintiff Cole courageously attempted to return work because they had exhausted all their available paid time off as well as unpaid FMLA leave.

83.

Throughout June 2022, Plaintiff Cole continued to work despite suffering daily panic attacks and episodes of uncontrollable crying and dissociation while trying to complete work assignments.

84.

On June 9, 2022, during an in-person client meeting, Mr. Young forcibly hugged Plaintiff Cole during without their permission, which caused them to immediately experience intense humiliation, shame, disgusts, and disassociation.

85.

Throughout the entire summer of 2022, Plaintiff Cole experienced a distressing escalation in both the frequency and intensity of their suicidal thoughts. They were overwhelmed by anxiety and fear, which included fear of job loss and harm to their reputation, their connections, and friendships. They were anxious about their ability to sustain themselves financially, and how that would erode their autonomy and sense of self. This mental and physical health decline was directly linked to their daily interactions and the supervision they received from Defendant Young.

86.

On July 10, 2022, Plaintiff Cole was compelled to take a medical leave due to a debilitating mental health crisis that rendered them completely unable to work. This crisis was characterized by severe depression, intense anxiety, paralyzing suicidal thoughts that endangered their life, and a reliance on alcohol as a means of self-medication.

87.

Plaintiff Cole started participated in intensive weekly therapy sessions to treat their worsening mental health, which at this point prevented them from doing any work.

88.

On or around August 10, 2022, Plaintiff Cole was admitted to Skyland Trail, a partial hospitalization program to treat major depression, gender dysphoria, and disorder, and suicidal ideations.

89.

In November 2022, Plaintiff Cole was transferred into a sober living program at the direction of their physiologist and psychiatrist to support their newly diagnosed alcohol use disorder.

90.

By December 2020, the deterioration of Plaintiff Cole's mental and physical health had become so severe that they were diagnosed with anorexia nervosa and began treatment for an eating disorder. The significant weight loss associated with this disorder had reached a critical point that posed a risk to Plaintiff Cole's life.

**Mr. Young Targeted and Groomed Plaintiff Cole Because They Were Gay, Non-Binary, Autistic, and Had a History of Mental Health Challenges**

91.

Because Accenture actively encourages its employees to be authentic and transparent, Plaintiff Cole unknowingly armed their abuser with enough personal and private information necessary to manipulate and exploit them.

92.

Mr. Young had actual knowledge that Plaintiff Cole had been managing severe depression and anxiety since high school. He was also acutely aware of Plaintiff Cole's journey with gender identity, their diagnoses of ADHD and autism, as well as them being queer and sexually attracted to women.

93.

Even more, Mr. Young had direct and personal knowledge of Plaintiff Cole's painful history of being shunned by their immediate family because of their sexual orientation and gender identity. In or around November 2021, Plaintiff Cole disclosed a painful family incident to Defendant Young when he asked them about their Thanksgiving holiday—Plaintiff Cole's sister discovered they were gay and informed their father she no longer wished to see them. Plaintiff Cole shared this

personal context with Defendant Young to help him comprehend any potential work performance issues through the perspective of this distressing event.

94.

Mr. Young also had direct and personal knowledge of previous abuse Plaintiff Cole experienced from the church they attended in college.

95.

Mr. Young knowingly, intentionally, and maliciously, exploited Plaintiff Cole's vulnerability and susceptibility to grooming and sexual harassment as a person experiencing the intersectional marginalization of mental health, gender identity, and sexual orientation.

## Mr. Young Conflated Personal and Work-Related Project Specific Communications with Plaintiff Cole

96.

On or around June 2021, Mr. Young notified Plaintiff Cole that they were being promoted to manager. Mr. Young notified Plaintiff Cole while Plaintiff Cole was out of the office on vacation. Before calling to tell them about the promotion and salary increase, Mr. Young texted Plaintiff Cole for approximately 30 minutes to tell them that he was in the emergency room, which included him texting pictures of himself on a hospital gurney.

97.

Again, on or around December 2022, Defendant Young called Plaintiff Cole to inform them that they were receiving a bonus and raise. In this instance, Plaintiff Cole was still out of the office due to the ongoing harm resulting from Defendant Young's sexual misconduct.

**Despite Plaintiff Cole's Impressive Record of Managing Their Mental Health as an Excellent, High-Impact Professional, Being Autistic Impaired Their Ability to React to Mr. Young's Sexual Harassment**

98.

As a neurodivergent, autistic, non-binary, gay person, Plaintiff Cole struggled to associate their deteriorating mental health, executive functioning, and work performance challenges with Mr. Young's sexual misconduct.

99.

This dynamic is further exacerbated in cases such as this, where the sexual predator is a highly regarded senior leader in the organization, who is also the employee's supervisor and has fastidiously established a trusted personal relationship with the victimized employee.

41

**Plaintiff Cole Reported Defendant Young's Sexual Harassment to Accenture's Complaint Hotline**.

100.

On December 2, 2022, after several months of deteriorating mental health and issues with work performance, Plaintiff Cole reported Defendant Young's ongoing sexual harassment to Accenture's complaint hotline.

101.

On December 5, 2022, Plaintiff Cole met with Heather Hampson ("Ms. Hampson") Employee Relations Manager at Accenture and Sarah Burky ("Ms. Burky"), Associate Director of Corporate Investigations for Accenture for approximately 1 hour to provide a more detailed report of Mr. Young's 2-year manipulation of Defendant Young's grooming and sexual harassment. Following the call, Plaintiff Cole provided text and emails to corroborate their complaint.

102.

In December 2022, following their report of Mr. Young's sexual misconduct, Plaintiff Cole was instructed by Ms. Hampson not to return to work until the investigation had concluded. Initially, it was not communicated to Plaintiff Cole whether this directive constituted paid or unpaid leave. It was only after repeated inquiries that Accenture clarified the leave was paid. Nonetheless, it remains

ambiguous whether Plaintiff Cole was initially put on unpaid leave after lodging a complaint of sexual harassment.

103.

Strangely—and perhaps as a foreshadowing of what was to come, after filing their complaint against Mr. Young, Ms. Hampson asked Plaintiff Cole if they wanted to continue working at Accenture. Plaintiff Cole confirmed that they loved their job and still wanted to work at Accenture.

104.

Ms. Hampson and Ms. Burky advised Plaintiff Cole that they could not discuss Mr. Young's sexual harassment complaint with anyone they worked with at Defendant Accenture.

105.

Throughout December 2022 and January 2023, Accenture investigated Plaintiff Cole's sexual harassment complaint against Mr. Young. On or around, December 11, 2022, Ms. Hampson explained that the investigation was taking longer than expected because Defendant Shook, as CHRO and a member of Accenture's executive team, was personally involved in the investigation, was aware of the complaints against Defendant Young, and would be one of the final decisionmakers about the outcome of the investigation.

43

106.

Assured by Accenture's zero tolerance on sexual harassment and commitment to employee protection and given Ms. Shook's personal involvement in the investigation and resolution process, Plaintiff Cole was optimistic about moving past the incident and returning to their workplace.

107.

On, or around January 10, 2023, Ms. Hampson advised Plaintiff Cole that Mr. Young would no longer be employed by Accenture.

108.

Upon information and belief, Defendant Accenture allowed Mr. Young to voluntarily resign in lieu of termination on January 18, 2023, with a severance package.

**Accenture Revictimized Plaintiff Cole After Reporting Mr. Young's Sexual Abuse**

109.

Accenture advised Plaintiff Cole that they could return to work on January 18, 2023, because Defendant Young would no longer be employed there. Ms. Hampson further advised Plaintiff Cole that their job would be secure for at least one year because Ryan Oakes was aware of Mr. Young's sexual harassment and that he would be responsible for them having time to readjust.

44

110.

On January 19, 2023, the day after Plaintiff Cole returned to work, they

received an email from Kimberly Mentzer, Senior Managing Director, and Health &

Public Service Client Group at Accenture, sent to the public service group in the

south market unit announcing Mr. Young's departure from Accenture.

> *Our current State of GA S&C Lead, Chris Young,* **has decided to pursue**
> **his passion outside of Accenture***. Chris has also played a pivotal role in*
> *elevating Accenture's brand in Georgia growing our Strategy and*
> *Consulting business.* **We will always appreciate Chris' personal style**
> *and passion for public service and wish him continued success in his*
> *next chapter. (emphasis added)*

111.

Upon information and belief, Defendant Young shared with several Accenture

employees that **"pursing his passion outside of Accenture"** included becoming a

member of the clergy and or some other religious or ministerial role.

112.

Upon information and belief, Mr. Young has sent copies of a book he

allegedly co-authored, entitled "God With Us," to some of his collogues that

currently employed at Accenture. Upon information and belief, he told several

Accenture employees that he left Accenture to pursue God's calling for him in

ministry -- a move that otherwise was unexpected and confounding due to his recent promotion to Managing Director on December 1, 2022.

113.

The mental impact to Plaintiff Cole by being confronted with a congratulatory email announcing their abuser's departure was staggering. After reading the email announcement, Plaintiff Cole immediately experienced anxiety and light heatedness.

114.

It is antithetical that Accenture would intentionally protect Mr. Young's reputation and character, despite is sexual misconduct, while simultaneously preventing Plaintiff Cole from healthily reintegrating back into the workplace by explaining their extended absence or returning to their team of trusted collogues.

**Defendant Ryan Oakes Intentionally Retaliated Against Plaintiff Cole by Transferring Them to an Inferior Position on a New Team**

115.

When Plaintiff Cole returned to work, they discovered that they had been assigned to a new team. The new team was supervised by Kelly Rogers and consisted of internal marketing assignments. This time had little to no direct client contact.

The primary function of this team was to support internal stakeholders with company messaging.

116.

While there were ample professional opportunities within the Accenture Public Service operational unit, Plaintiff Cole was not asked about their professional preferences, interests, skills, or intentions when they were reassigned to an internal marketing team.

117.

Despite the fact that Accenture's Public Service industry was the fastest growing industry group in fiscal year 2023 (14% increase from fiscal year 2022), and second highest-revenue industry at $12.6 billion,[16] Plaintiff Cole was transferred to an inferior team.

118.

Ryan Oakes replaced Mr. Young as Plaintiff Cole's career counselor, which meant that he was now tasked with guiding their professional development at Accenture as well as supporting them in their recovery from the sexual harassment and abuse they'd been subjected over the last two years.

---

[16] https://newsroom.accenture.com/content/1101/files/full-fy23-infographic.pdf

119.

Though Plaintiff Cole named multiple individuals they could envision as a supervisor or career counselor after reporting Defendant Young, these suggestions were ignored and dismissed by Mr. Oakes and Accenture.

120.

Upon information and belief, Defendant Oakes and Mr. Young were very close friends. Upon information and belief, Ryan Oakes was at least one of the decision makers involved in transferring Plaintiff Cole to a less desirable team as punishment for complaining about Mr. Young.

121.

Upon information and belief, Ellyn Shook and Ryan Oakes were the only people in senior leadership in the public service industry personally aware that Plaintiff Cole was sexually harassed by Mr. Young.

122.

Mr. Oakes and Ms. Shook completely failed to offer any measure of support to Plaintiff Cole despite their awareness of Plaintiff Cole's struggle reacclimating back into the office.

123.

Shortly after transitioning to a new team, Plaintiff Cole became aware of their struggle to perform at the same level as prior to Mr. Young's sexual harassment. They felt profoundly isolated and were overcome with stress in their efforts to maintain their previously high standard of work.

124.

On or around January 31, 2023, Plaintiff Cole had reached a breaking point, which required them to take several days off.

125.

In February 2023, Plaintiff Cole asked Ms. Hampson, a representative in the legal department at Accenture if they could disclose to their new supervisor that the long-term effects of Mr. Young's sexual harassment were continuing to negatively impact their work performance.

126.

On or around March 2023, Ms. Hampson reiterated to Plaintiff Cole that they could not tell any of their trusted colleagues that Mr. Young sexually groomed, exploited, harassed, and abused them for more than two years. Plaintiff was expressly forbidden from telling anyone that Mr. Young intentionally manipulated

Plaintiff because they are autistic, non-binary, and gay with a long history of mental health challenges.

127.

During the same conversation, Ms. Hampson warned and reminded Plaintiff Cole that they could only share their historical mental health challenges as a reasonable explanation to their supervisors or co-workers for any work performance issues.

128.

On or around May 5, 2023, which coincidentally was the day before Plaintiff Cole's 30th birthday, their mental health team considered admitting them into an intensive outpatient eating disorder program because their depression and eating disorder symptoms had reached such a critical level that there was some concern about Plaintiff Cole's life.

129.

On or around May 16, 2023, Plaintiff Cole submitted their final work assignment before going back out on medical leave.

130.

On or around May 31, 2023, Plaintiff Cole was forced to take yet another leave of absence from work because of the ongoing impact from Mr. Young's sexual abuse and the additional burdens placed on them by Defendant Accenture.

131.

Because Plaintiff Cole was still unable to work, they submitted a worker's compensation claim, but on or around June 15, 2023, Accenture denied Plaintiff Cole's claim citing that "Harassment/Mental Illness does not come under Worker's Compensation."

132.

On or around June 23, 2023, Plaintiff Cole appealed their previous denial for long-term disability, while continuing to seek intense therapy based on the mental health impact of the sexual trauma they experienced at Accenture.

133.

On or around September 18, 2023, Plaintiff Cole's long term disability appeal was granted. Despite this grant, Plaintiff Cole suffered negative an ongoing reduction in their salary and benefits.

134.

On October 31, 2023, while still out on medical leave, Plaintiff Cole emailed Ms. Hampson their intention to report Mr. Young to the State of Georgia for his sexual misconduct. Plaintiff Cole wanted assurance they would not face repercussions and that the report would not negatively impact any of their former colleagues on the Georgia Public Service team.

135.

Within the same October 31 email, Plaintiff Cole also expressed their desire to be transferred back to the Georgia public service team their team in Georgia, and reiterated a need to share with coworkers so they could return without additional burden of navigating the disclosure of their absence, or the malfeasance of Defendant Young.

136.

This once-trusted colleague, upon information and belief, still holds respect and admiration within the Georgia Public Service team and greater Public Service industry group as a direct result of Defendant Accenture's instruction to obscure the truth of his departure from the company.

137.

Defendants Accenture, Oakes, and Shook made the conscious and deliberate decision to protect and uphold Mr. Young's reputation at the expense of the safety of remaining Accenture employees, who - upon information and belief – are still in contact with Mr. Young in a personal capacity.

138.

Accenture's efforts to safeguard Defendant Young's reputation have overshadowed the safety of its current employees that worked with him. These employees lack information that could inform their future interactions with Mr. Young, a known sexual abuser. Defendant Young has portrayed his departure from Accenture as a selfless act of following divine guidance toward ministry.

139.

On or around November 14, 2023, Heather Hampson, in what seemed to be a a drastic change of heart, told Plaintiff Cole they could talk to their coworkers about Defendant Young's sexual harassment if they really needed to. Yet, Ms. Hampson immediately questioned Plaintiff Cole's reasons for needing such conversations and subtly suggested they were unnecessary, proposing that Accenture's HR department was available for talks instead. This response was not only insincere but also conflicted with their previous orders to discuss the harassment with no one.

Previously, Ms. Hampson had instructed Plaintiff Cole not to mention the sexual misconduct and the subsequent damage it caused to anyone.

**Accenture Failed to Protect Plaintiff Cole and Retaliated Against Them for Complaining**

140.

Accenture inexplicably failed their duty as an employer, particularly here, where an employer is regarded as one of "The Best Places to Work" and where that employer holds itself out as being a safe space for employees like Plaintiff Cole.

> *"Psychological safety is about creating the environment for these positive emotions to thrive, but it is also about making a safe space to manage other kinds of negative emotions. Negative emotions will inevitably surface in a work environment and psychological safety makes room for these emotions as well, so they can be sorted out."*[17]

141.

Accenture refused to protect Plaintiff Cole from being sexually harassed by a supervisor and career counselor. To make things worse, Accenture and Defendant Ryan Oakes revictimized and retaliated against Plaintiff Cole as they were attempting to recover from the extreme and severe impact resulting from the harassment.

---

[17] https://www.accenture.com/us-en/blogs/business-functions-blog/psychological-safety-corporate-culture

142.

Accenture unreasonably expected Plaintiff Cole to carry the additional burden of concealing their truth and the truth of what occurred - a restriction in the workplace they now must carry simply and only because they experienced sexual abuse in the workplace.

143.

Accenture's silencing behavior inflicted an additional burden on Plaintiff Cole carry as a victim of sexual harassment.

144.

Accenture's sexual harassment policy clearly states zero tolerance for sexual harassment in the workplace and have a zero-tolerance retaliation. Regardless, Plaintiff Cole was made responsible for the severe consequences caused by Defendant Young's sexual misconduct, and they have been retaliated against because they reported him.

145.

Accenture made Plaintiff Cole responsible for the actions of their abuser, and indirectly required them to protect his reputation at the expense of their own reputation, mental health, and career trajectory.

**Mr. Young's Sexual Harassment Has Caused Plaintiff Cole Lifelong Harm**

146.

To state the obvious, Plaintiff Cole did not invite or welcome any of this sexual misconduct by Mr. Young, their direct supervisor. As someone who openly dates women and who never shied away from their sexual orientation in the workplace, it was an unstated, obvious reality that they did not have any romantic interest in Defendant Young.

147.

Despite the debilitating impact of the sexual harassment they suffered, Plaintiff Cole held onto the hope of eventually rejoining their former team and reclaiming the level of success and career progression they had enjoyed before the sexual abuse. This hopefulness concerning their future at Accenture partially fueled Plaintiff Cole's motivation to persevere, even while grappling with the significant mental health challenges that ensued from Defendant Young's sexual harassment.

148.

In the year-long aftermath of Defendant Young's sexual grooming, harassment, and abuse, Plaintiff Cole suffered the additional responsibility of managing medical bills for psychiatric treatment, deteriorating mental health, social

disconnection, battles with receiving disability benefits, multiple leaves of absence, an irreparably damaged career trajectory, and tarnished professional reputation.

149.

Before meeting Mr. Young, Plaintiff Cole was professionally confident, financially stable, and emotionally secure. Plaintiff Cole had experienced countless professional successes and milestones at Accenture and expected many more to come their way. Plaintiff expected to continue with the same upward professional trajectory as they had during the first seven years with Accenture. In fact, Plaintiff Cole dreamed of retiring from Accenture as one of their highest-ranking neurodivergent, non-binary, gay senior leaders.

150.

After enduring two years of Mr. Young's calculated and incessant grooming and sexual harassment, Plaintiff Cole was left feeling uncertain about their professional future, alienated from Accenture, and worried they would never fully recover from the damage inflicted by Defendants Accenture, Young, Shook, and Oakes.

151.

As a result of the immense trauma Plaintiff Cole endured for almost 2 years with Defendant Young, they have suffered and continue to suffer from immense emotional distress.

152.

With the added complexity of living with autism, ADHD, and managing their deteriorating mental and physical health, Plaintiff Cole eventually made the connection between Mr. Young's sexual exploitation and the decline in their mental and physical well-being. This realization came after several months of intensive mental health support from their treatment team in a partial hospitalization program.

153.

Following the sexual encounter on January 1, 2022, Plaintiff Cole developed symptoms of PTSD. The most notable symptoms were emotional numbing and avoidance, a subconscious effort to deny the extensive damage inflicted by Mr. Young. This damage profoundly destabilized Plaintiff Cole's professional, social, financial, personal, and emotional stability.

154.

Plaintiff Cole's psychiatric and medical team will provide expert testimony about the life altering harm and impact to Plaintiff Cole's mental health and executive functioning caused by Defendant Young's sexual harassment.

**Mr. Young and Accenture Pushed Plaintiff Cole to Their Breaking Point**

155.

On December 21, 2023, Plaintiff Cole emailed Defendant Shook, Defendant Oakes, as well as Ms. Hampson to resign from Accenture under duress.[18]

156.

Plaintiff Cole had finally reached a breaking point and felt like they had absolutely no other choice. Despite surviving Mr. Young's calculated and insidious grooming and sexual abuse, Plaintiff Cole's life was put at risk navigating the painful aftermath of his sexual misconduct, which was perpetrated by Defendants Accenture, Shook, and Oakes.

157.

Recovering from the initial sexual abuse was its own challenge that threatened the life of Plaintiff Cole, and the additional and insidious emotional abuse

---

[18] **Exhibit C**, resignation email dated December 21, 2023.

imputed by Accenture required more of Plaintiff Cole than they could give. They knew they had to choose between their healing and safety and their career - one now sat in opposition to the other.

158.

It was clear to Plaintiff Cole that they could not ensure their mental, emotional, or physical safety while continuing to be employed by Accenture. Having been repeatedly and consistently denied the stated mission of care from a company that literally sells their approach to valuing the "truly human" employees in the organization, Plaintiff Cole realized they did not possess the energy or power to reverse the manipulation and control Accenture forced onto them.

159.

Based on the foregoing, Plaintiff Haley Cole is entitled recover damages from Defendants Accenture, Young, Shook, and Oakes in their professional and individual capacities. Plaintiff Cole is entitled to damages for past, present, and future medical expense related the damages they received because of the Defendants' actions, specific amounts to be proven at trial and compensatory damages for past current and future physical and mental suffering, pain, emotional

distress, and harm, in such an amount as may be show by the evidence and determined by the enlightened conscience of the jury.

## CAUSES OF ACTION

### COUNT I:

### GENDER DISCRIMINATION IN VIOLATION OF TITLE VII

*(Against Defendants Accenture, Young, Shook, and Oakes)*

160.

Plaintiff re-alleges and incorporates the factual allegations in foregoing paragraphs 1- 159 into Count I as if fully set forth herein.

161.

Defendants discriminated against Plaintiff Cole on the basis of their gender in violation of Title VII of the Civil Rights Act of 1964, which makes it "unlawful…for an employer to fail or refuse to hire, or to discharge any individual, or otherwise to discriminate against any individual…because of such individual's race, color, religion, sex or national origin." 42 U.S.C. §2000e – 2(a)(1).

162.

Title VII protects gay and transgender employees. See also *Bostock v. Clayton County, Georgia*, No. 17-1618 (S. Ct. June 15, 2020).

163.

Plaintiff Cole is both queer and a non-binary individual who was assigned female at birth and was socialized as a female throughout their upbringing and young adulthood.  Plaintiff Cole's pronouns are "they / them / theirs."

164.

Defendant Young intentionally and maliciously targeted Plaintiff Cole for grooming and sexual harassment because of their gender identity and sexual orientation.

165.

All Defendants discriminated against Plaintiff Cole on the basis of their gender by subjecting them to disparate treatment based on their gender identity and sexual orientation, including but not limited to, sexual grooming and harassment, battery, and a hostile work environment.

166.

Defendant Young persistently engaged in graphic and inappropriate discussions with Plaintiff Cole related to his homosexual desires and experiences with his boyfriend.

167.

Defendant Young repeatedly asked lewd and inappropriate personal questions about Plaintiff Cole's gender identity and sexual orientation. One of many examples is when Mr. Young sent Plaintiff Cole the following text messages:

> "*Oh see. Now you're being all proper… all these conflicting feelings… your fault… we are erasing boundaries lol… how fluid are you?*"

168.

These discussions were neither solicited nor welcomed by Plaintiff Cole. The frequent and unrelenting nature of these sexually inappropriate conversations were always initiated by Defendant Young and there were never welcomed by Plaintiff Cole.

169.

The sexually discriminatory behavior of Defendant Young—a supervisor and career counselor—was intentionally directed at Plaintiff Cole and was based on Plaintiff Cole's gender identity, gender expression, and sexual orientation. Given the deliberate nature of these acts, all Defendants bear responsibility for the general and special damages that directly ensued from each act of discrimination committed against Plaintiff Cole on the grounds of their gender identity and sexual orientation.

170.

Such discrimination has caused Plaintiff Cole to endure long-term professional harm that cannot be undone.

171.

In addition, Defendant Young physically touched Plaintiff Cole in a manner that was unwanted and sexually offensive in nature, including forced hugs. He also joked about physically touching Plaintiff Cole and spending time alone with them in his home.

172.

On or around June 2, 2021, Defendant Young required Plaintiff Cole to work from his home to support a repairman. When Plaintiff Cole reluctantly agreed, because they did not feel like they really had a choice, Defendant Young responded, sent a text message on or around June 2, 2021,

> *"You're a LIFE SAVER"*
>
> *"Love love love"*
>
> *"Plus I get to hug you"*
>
> *"you're literally a lifeline to me"*
>
> *"And I love that I got to tell you that you were promoted"*
>
> *"Hehe. You earned it. It was a no brainer."*

*"I think you were the only manager promote in the South PS group"*

*"I'm fairly certain."*

173.

Defendant Young's insinuation of favoritism and the provision of special opportunities to Plaintiff Cole, conditional on their willingness to engage in a personal and sexual relationship with him, constituted gender discrimination. This resulted in Plaintiff Cole being unjustly deprived of professional advancements, opportunities for growth, and inclusivity within their career.

174.

Starting in 2020 and persisting through December 2022, Defendant Young engaged in relentless and deliberate grooming and sexual harassment of Plaintiff Cole. This behavior occurred with distressing regularity, almost daily, throughout this period.

175.

Defendant Young's sexually harassing communications with Plaintiff Cole took place both in the workplace—creating a severe and pervasive sexually hostile work environment for Plaintiff Cole—and in continued communications outside of the workplace, causing constant distress and abuse to Plaintiff Cole.

176.

The discriminatory conduct of all Defendants based on Plaintiff Cole's gender identity, gender expression, and sexual orientation was intentional in nature, and therefore, all Defendants are liable for all general, special, and punitive damages proximately resulting from each discriminatory act committed against Plaintiff Cole.

## COUNT II:

## SEXUAL HARASSMENT AND HOSTILE WORK ENVIRONMENT IN VIOLATION OF TITLE VII

*(Against Defendants Accenture, Young, Shook, and Oakes)*

177.

Plaintiff re-alleges and incorporates the foregoing factual allegations in paragraphs 1 – 176 into Count II as if fully set forth herein.

178.

On multiple occasions, Mr. Young, both in his individual and professional capacity as Plaintiff Cole's direct supervisor, career counselor, and Georgia Public Practice Group leader engaged in repeated sexually offensive and/or discriminatory conduct, such that the work environment of Plaintiff Cole became intimidating, hostile, and abusive.

179.

Mr. Young repeatedly discussed his own personal homosexual desires and experiences with Plaintiff Cole, specifically because of Plaintiff Cole's sexual orientation and gender identity. Such graphic and inappropriate conversations were not sought nor encouraged by Plaintiff Cole, and the repeated and continuous nature of such conversations by Defendant Young were the direct and proximate cause of Plaintiff Cole's sexually hostile work environment.

180.

In addition to unwanted conversations about Defendant Young's personal sexual experiences and desires, Plaintiff Cole was also subjected to sexually inappropriate jokes and lewd comments from Defendant Young about Plaintiff Cole's sexual orientation, gender identity, and sexual preferences.

181.

In addition, Defendant Young physically touched Plaintiff Cole in a manner that was unwanted and sexually offensive in nature, including forced hugs.

182.

Defendant Young's persistent and targeted grooming and sexual harassment of Plaintiff Cole commenced in 2020 and continued an almost daily basis until he voluntarily resigned from Defendant Accenture in January 2023.

183.

Defendant Young's sexually harassing communications with Plaintiff Cole took place not only in the workplace, creating a hostile work environment for Plaintiff Cole, but continued in communications outside of the workplace, causing constant distress and abuse to Plaintiff Cole.

184.

On or about January 1, 2022, Defendant Young sent over 162 text messages to Plaintiff Cole, pressuring forcing them to engage in unwanted reciprocated sexual conversation over text message. Defendant Young then video called Plaintiff Cole, where he continued to pressure Plaintiff Cole to engage in unwanted sexually explicit conversation and conduct over video with him.

185.

As Defendant Young was Plaintiff Cole's direct supervisor and career counselor, they did not feel that they had the ability to refuse his sexual advances, without fear or concern for the safety and continuation of their employment.

186.

Mr. Young sent sexually graphic images of his penis and testicles, demanded that Plaintiff Cole share intimate images of themselves against their

protest, and forced them to watch several minutes of him masturbating until he ejaculated during a live FaceTime call.

187.

At no time during the January 1st incident did Plaintiff Cole feel free to leave the conversation without fear of consequence and retaliation by Mr. Young as both their direct supervisor and career counselor.

188.

Accenture knew, or should have known, about the sexually harassing conduct of Defendant Young, and is, therefore, directly liable for said conduct, and the resulting sexual harassment and hostile work environment suffered by Plaintiff Cole.

189.

Even after Accenture was made explicitly aware of Mr. Young's sexual misconduct, Accenture actively protected his professional reputation within the organization and continued to employ him in good standing until his voluntary departure on January 19, 2023.

190.

Defendant Young's conduct described above was willful, wanton, and malicious. At all relevant times, Defendant Young acted with conscious disregard

69

for Plaintiff Cole's rights and feelings, acted with the knowledge of or with reckless disregard for the fact that his conduct was sure to cause injury and/or humiliation to Plaintiff Cole, and intended to cause fear, physical injury and/or pain and suffering to Plaintiff Cole.  By virtue of the foregoing, Plaintiff Cole is entitled to recover punitive damages.

191.

Defendant Accenture knew or should have known of the hostile work environment suffered by Plaintiff Cole as a result of the sexual harassment perpetrated by Defendant Young, and not only failed to act in a timely and appropriate manner to stop the sexually harassing conduct but continued to protect and employ Defendant Young in good standing until his voluntary departure on January 18, 2023.

192.

As a result of Defendant Young's sexual misconduct and Defendants Accenture, Shook, and Oakes negligence and retaliation, Plaintiff Cole has suffered and continues to suffer long-term harm, including physical injury, severe emotional distress, humiliation, depression, anxiety, and other consequential damages for which they are entitled to an award of monetary damages and other relief.

193.

Defendants Accenture, Young, Shook, and Oakes are joint and severally liable for all general and special damages proximately resulting from the malicious and outrageous sexual harassment and resulting hostile work environment suffered by Plaintiff Cole.

## COUNT III:

## CONSTRUCTIVE DISCHARGE IN VIOLATION OF TITLE VII

*(Against Defendants Accenture, Young, Shook, and Oakes)*

194.

Plaintiff re-alleges and incorporates the foregoing factual allegations in paragraphs 1 – 193 into Count III as if fully set forth herein.

195.

On multiple occasions, Defendant Young, both in his individual and professional capacity as Plaintiff Cole's direct supervisor and career counselor, engaged in repeated sexually offensive and/or discriminatory conduct, such that the work environment of Plaintiff Cole became intimidating, hostile, and abusive.

196.

Defendant Young repeatedly discussed his own personal homosexual desires and experiences with Plaintiff Cole, specifically because of Plaintiff Cole's

sexual orientation and gender identity. Such graphic and inappropriate conversations were not incited, invited, or welcome by Plaintiff Cole.

197.

The repeated and continuous nature of such conversations by Defendant Young were the direct and proximate cause of Plaintiff Cole's sexually hostile work environment.

198.

In addition to unwanted conversations about Defendant Young's personal sexual experiences and desires, Plaintiff Cole was also subjected to sexually inappropriate jokes and lewd comments from Mr. Young about Plaintiff Cole's sexual orientation, gender identity, and sexual preferences.

199.

As one of many examples is when Mr. Young asked Plaintiff Cole *"how fluid are you?"* which was explicitly related to Plaintiff Cole's gender identity and sexual orientation.

200.

After two years of trying to recover Plaintiff Cole resigned on December 21, 2023, because they had reached a breaking point.[19]

---

[19] Exhibit C.

201.

Plaintiff Cole's resignation was the direct and proximate consequence of Mr. Young severe and pervasive sexual harassment, which made the working environment "so intolerable that a reasonable person would have felt compelled to resign."

202.

Plaintiff Cole's resignation constituted a constructive discharge. See, *e.g.,* *Breeding v. Arthur J. Gallagher & Co.,* 164 F.3d 1151, 1160 (C.A.8 1999) ("[A]lthough there may be evidence from which a jury could find sexual harassment, ... the facts alleged [for constructive discharge must be] ... so intolerable that a reasonable person would be forced to quit."); *Perry v. Harris Chernin, Inc.,* 126 F.3d 1010, 1015 (C.A.7 1997) ("[U]nless conditions are beyond 'ordinary' discrimination, a complaining employee is expected to remain on the job while seeking redress.").

203.

"When a supervisor engages in harassment which results in an adverse 'tangible employment action' against the employee, the employer is automatically held vicariously liable for the harassment." *Mangrum v. Republic Indus., Inc.,* 260 F. Supp. 2d 1229, 1249 (N.D. Ga.), *aff'd,* 88 F. App'x 390 (11th Cir. 2003)(citing

*Ellerth,* 524 U.S. at 763, 118 S.Ct. 2257; *Faragher,* 524 U.S. at 790, 118 S.Ct. 2275).

*See also, Green v. Brennan*, 136 S. Ct. 1769 (2016) (holding that constructive

discharge is to be treated as a tangible employment action.)

204.

Defendant Accenture is strictly liable to Plaintiff Cole for Defendant Young's

sexual grooming and hostile work environment because Defendant Young was

Plaintiff Cole's supervisor and (2) Plaintiff Cole resigned as a result of the sexual

harassment, which constituted a construct discharge. A constructive discharge is

treated as an adverse employment action for Title VII purposes. See *Faragher v.*

*City of Boca Raton,* 524 U.S. 775, 807, 118 S.Ct. 2275, 141 L.Ed.2d 662 (1998);

*Ellerth,* 524 U.S. at 762–63, 118 S.Ct. 2257 ("[A] tangible employment action taken

by the supervisor becomes for Title VII purposes the act of the employer. Whatever

the exact contours of the aided in the agency relation standard, its requirements will

always be met when a supervisor takes a tangible employment action against a

subordinate. In that instance, it would be implausible to interpret agency principles

to allow an employer to escape liability...."); *Llampallas v. Mini–Circuits, Lab., Inc.,*

163 F.3d 1236, 1247 (11th Cir.1998) ("[A]ny time the harasser makes a tangible

employment decision that adversely affects the plaintiff, an inference arises that

there is a causal link between the harasser's discriminatory animus and the

employment decision. A Title VII plaintiff, therefore, may establish her entire case simply by showing that she was sexually harassed by a fellow employee, and that the harasser took a tangible employment action against her.").

## COUNT IV:

## RETALIATION IN VIOLATION OF TITLE VII

*(Against Defendants Accenture, Shook, and Oakes)*

205.

Plaintiff re-alleges and incorporates the foregoing factual allegations in paragraphs 1 – 204 into Count IV as if fully set forth herein.

206.

Plaintiff Cole endured persistent and egregious sexual harassment at the hands of Mr. Young, which led to profound mental health consequences. Following Mr. Young's voluntary resignation, Plaintiff Cole was advised against discussing the misconduct and faced a hostile work environment upon their return.

208.

Plaintiff Cole was explicitly instructed not to disclose the incident of sexual harassment to colleagues, significantly restricting their support network and effectively modifying the terms and conditions of their employment at Accenture.

209.

Despite a strong desire to resume work and share their experiences to facilitate trauma recovery, Plaintiff Cole encountered limitations imposed by Accenture, including a mandate of silence regarding the investigation and incident, which adversely affected their reintegration into the team and potential career advancement.

210.

In response to the harassment, Accenture failed to provide Plaintiff Cole with adequate support or due consideration for the incident's impact on their career and well-being, as evidenced by a reassignment to a different team that disregarded consequences for their professional development and personal recovery.

211.

Plaintiff Cole's attempts to seek transparency and form authentic connections with colleagues were impeded by Accenture, indicating an indifference to their well-being and suggestive of retaliation for raising issues of harassment.

212.

Upon trying to return to work, Plaintiff Cole was repeatedly discouraged from discussing the events that led to their leave of absence, contributing to a decline in their mental health.

213.

Plaintiff Cole's return to work after Defendant Young's sexual harassment was made more difficult by coworkers publicly praising Mr. Young, amplifying Plaintiff Cole's feelings of distress and isolation, and signaling a retaliatory and extremely unsupportive environment within Accenture post-incident.

214.

Accenture engaged in retaliatory actions against Plaintiff Cole after they filed a sexual harassment complaint against Mr. Young, characterized by a lack of proper response or accommodations to address the harm they experienced.

215.

Defendant Ryan Oakes played a key role in the decision that resulted in Plaintiff Cole's transfer to a less prestigious position upon their return to work in January 2023. This aligns with the precedent set in *Muldrow v. City of St. Louis, Missouri*, in which the Supreme Court held that a claim under Title VII for gender discrimination and retaliatory transfer only requires showing some adverse effect on employment conditions.

216.

Defendant Ellyn Shook was directly involved in the investigation of Mr. Young's sexual harassment of Plaintiff Cole, which significantly influenced Plaintiff Cole's decision to tender their resignation to Ms. Shook.

217.

Defendant Young's grooming behaviors and blurring of personal and professional boundaries had a severe impact on Plaintiff Cole's mental health and their capacity to perform their job functions effectively.

## COUNT V:

## BATTERY

*(Against Defendants Accenture and Young)*

218.

Plaintiff re-alleges and incorporates the foregoing factual allegations in paragraphs 1 – 217 into Count V as if fully set forth herein.

219.

On multiple occasions, both as an individual and in his capacity as the direct supervisor and career counselor of Plaintiff Cole, Defendant Young physically touched Plaintiff Cole in an offensive manner without their permission or other justification.

220.

Specifically, on or about June 9, 2022, Defendant Young forcibly hugged Plaintiff Cole against their wishes and without their consent. This unwanted touching inflicted both physical and mental injury upon Plaintiff Cole.

221.

Under Georgia law "any unlawful touching of a person's body, even though no physical injury ensues, violates a personal right and constitutes a physical injury to that person." *Brown v. Super Discount Markets*, 223 Ga. App. 174 (477 S.E.2d 839) (1996).

222.

A cause of action for battery exists for any unlawful touching which is offensive. *Ellison v. Burger King Corp.*, 294 Ga. App. 814, 816–817(2)(a), 670 S.E.2d 469 (2008) ("To constitute an assault no actual injury need be shown, it being only necessary to show an intention to commit an injury, coupled with an apparent ability to do so." (Punctuation omitted.)

223.

Defendant Young intended to intimidate and stress Plaintiff Cole by encroaching upon their personal space and touching them without their permission.

This unwanted touching of Plaintiff Cole constitutes battery under Georgia law. OCGA § 51–1–14.

224.

On each occasion that Defendant Young touched Plaintiff Cole in an offensive manner without permission or other justification, Defendant Accenture committed battery under the legal theory of respondent superior.

225.

Accenture is also liable for Defendant Young's tortious actions because (1) he was a sufficiently highly placed corporate officer, owner, or principal that their knowledge and actions are directly imputed to Accenture; and (2) Accenture had actual and constructive knowledge of Mr. Young's misconduct and failed to protect Plaintiff Cole. Accenture therefore condoned, adopted, and ratified Defendant Young's tortious conduct, making it also liable for his tortious actions.

226.

Defendants Young and Accenture are both liable for all general and special damages proximately resulting from each battery of Plaintiff Cole.

## COUNT VI:

## INVASION OF PRIVACY

*(Against Defendant Young)*

227.

Plaintiff re-alleges and incorporates the foregoing factual allegations in paragraphs 1 – 226 into Count VI as if fully set forth herein.

228.

The "unreasonable intrusion" aspect of the invasion of privacy involves a prying or intrusion, which would be offensive or objectionable to a reasonable person, into a person's private concerns. See Keeton, *Prosser & Keeton on Torts* § 117 at pp. 855–856 (5th ed. 1984). See also Adams & Adams, *Georgia Law of Torts* (1989) § 29–3 at pp. 342–343.

229.

"[H]ighly personal questions or demands by a person in authority may be regarded as an intrusion on psychological solitude or integrity and hence an invasion of privacy." *Yarbray v. Southern Bell Tel.* [&] Co., 261 Ga. 703, 705, 409 S.E.2d 835 (1991). See also *Equal Emp. Opportunity Comm'n v. Nunez, Inc.*, No. 1:09-CV-2661-WSD-AJB, 2011 WL 13168394, at *28 (N.D. Ga. Feb. 28, 2011), *report and recommendation adopted*, No. 1:09-CV-2661-WSD, 2011 WL 13175436 (N.D. Ga.

Mar. 14, 2011) (finding invasion of privacy claim in connection with sexual harassment allegations). See also, Keeton, *Prosser & Keeton on Torts,* supra, at p. 121 (Supp.1988). See also *Phillips v. Smalley Maintenance Services*, 435 So.2d 705 (Ala. 1983) (finding claim supported with evidence that employee's supervisor repeatedly asked employee highly personal and specific questions about her sex life and repeatedly requested sexual favors).

230.

On multiple occasions, Defendant Young invaded Plaintiff Cole's privacy by intentionally and repeatedly asking them lewd and inappropriate sexual questions, such as, (1) asking them if they preferred the term "cunt" or "pussy," (2) asking if they preferred to be "on top or bottom during sexual intercourse", and (3) asking "how fluid are you" with respect to possible group sex with Defendant Young and his boyfriend.

231.

In addition to asking Plaintiff Cole pointed questions of a sexual nature, Mr. Young also made sexual demands of Plaintiff Cole, including asking Plaintiff Cole send sexually explicit images of themself and to touch themself sexually while Mr. Young masturbated during the January 1, 2022, call.

232.

The nature of Mr. Young's personal questions about Plaintiff Cole's sexual orientation, gender identity, and sexual preferences were invasive and highly inappropriate.

233.

Damages for Plaintiff Cole's mental health and physical injuries directly and proximately caused by Defendant Young's "wrongful intrusion or invasion" are recoverable.

## COUNT VII:

## INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

*(Against Defendants Accenture, Young, Shook, and Oakes)*

234.

Plaintiff re-alleges and incorporates the foregoing factual allegations in paragraphs 1 –233 into Count VII as if fully set forth herein.

235.

Defendant Young's sexual misconduct, which included requiring Plaintiff Cole to witness him masturbating until he ejaculated during a live Facetime call is outrageous and beyond all reasonable bounds of decency. *See Howerton v. Harbin Clinic, LLC,* 333 Ga. App. 191, 207, 776 S.E.2d 288, 301 (2015). *See also* Fayette

*Family Dental Care,* 312 Ga.App. at 233, 718 S.E.2d 88 (conduct of plaintiff's employer in exposing himself and masturbating in the workplace could be considered extreme and outrageous); *Mangrum v. Republic Indus.,* 260 F.Supp.2d 1229, 1256(III)(D) (N.D.Ga.2003) (supervisor's alleged exposure of his penis to an employee could constitute sufficiently extreme and outrageous conduct to support an intentional infliction of emotional distress claim under Georgia law).

236.

Defendant Young knew or should have known that his sexual grooming and harassment would be likely to cause harm, injury, embarrassment, shame and or would otherwise have or cause other trouble and injury to Plaintiff Cole.

237.

Plaintiff Cole has suffered severe and irrepealable mental anguish and emotional distress as a direct and proximate result of Defendant Young's unlawful actions.

238.

As a direct and proximate cause of Defendant Young's sexual misconduct and harassment, Plaintiff Cole experienced hopelessness, confusion, betrayal, fright, horror, grief, shame, humiliation, embarrassment, anger, disappointment, worry, and nausea.

239.

As a direct and proximate cause of Defendant Young's sexual misconduct and harassment, Plaintiff Cole suffered severe, extreme, and debilitating mental anguish, including a recurrence of major depression, anxiety, ADHD, anorexia nervosa, suicidal ideations, sleeplessness, inability to concentrate, and irritability.

240.

Plaintiff Cole experienced mental and emotional harm so severe they had to seek medical, psychological, and psychiatric treatment, including partial in-patient hospitalization therapy to treat intrusive suicidal thoughts, as well as emerging substance abuse and an eating disorder, both of which were new harm developed exclusively as a direct and proximate result of Mr. Young's sexual harassment. See *Troncalli,* 237 Ga.App. at 11–12, 514 S.E.2d 478 (affirming jury verdict in favor of plaintiff on an intentional infliction of emotional distress claim where the evidence showed that as a result of the defendant's behavior, she " developed shingles, experienced nausea and vomiting, became frightened and depressed, and sought psychological counseling"); *Coleman,* 191 Ga. App. at 168–169(1), 381 S.E.2d 303 (emotional distress suffered by plaintiff as a result of sexually harassing conduct was sufficiently severe to support a claim for intentional infliction of emotional distress; evidence showed that she suffered "physical manifestations (headaches, crying,

chest pains) as well as mental and emotional symptoms (upset, despondency, depression)" and that she sought medical treatment for these conditions); *Anderson v. Chatham,* 190 Ga. App. 559, 567(8), 379 S.E.2d 793 (1989) (upholding jury verdict in favor of plaintiff on an intentional infliction of emotional distress claim where the evidence showed that she suffered "significant physical manifestations directly resulting from" the defendant's conduct).

241.

In addition to the severe mental health impact, Defendant Young's sexual misconduct caused Plaintiff Cole to suffer irreparable damage to their professional trajectory as well as their professional and personal reputation.

242.

Plaintiff Cole also suffers from severe depression, the symptoms of which have been exacerbated by the consistently high levels of stress and reputational harm caused by both Defendants Accenture and Young, which have severely impaired their ability to conduct home, work, and social activities.

243.

Defendant Young's conduct described above was extreme, outrageous, willful, wanton, and malicious.  At all relevant times, Defendant Young acted with conscious disregard for Plaintiff Cole's rights and feelings, acted with the knowledge

of or with reckless disregard for the fact that his conduct was sure to cause injury and/or humiliation to Plaintiff Cole, and intended to cause fear, physical injury and/or pain and suffering to Plaintiff Cole. By virtue of the foregoing, Plaintiff Cole is entitled to recover punitive damages.

244.

Defendants Accenture and Young are equally liable for all general and special damages proximately resulting from the malicious and intentional infliction of emotional distress and resulting pain and suffering they caused Plaintiff Cole in an amount greater than $75,000 to be determined at trial.

## COUNT VIII:

## NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS

*(Against Defendants Accenture, Young, Shook, and Oakes)*

245.

Plaintiff re-alleges and incorporates the foregoing factual allegations in paragraphs 1 – 244 into Count VIII as if fully set forth herein.

246.

All Defendants engaged in a pattern of reckless, negligent and/or careless conduct over the course of Plaintiff Cole's employment with Accenture, causing extensive and persistent physical injuries to Plaintiff Cole.

247.

Defendants Accenture, Shook, and Oakes engaged in repeated efforts to protect and maintain Defendant Young's professional and personal reputation, despite actual knowledge that he groomed and sexually harassed Plaintiff Cole for over two years.

248.

Accenture did this in violation of their own stated polices eve after Plaintiff Cole reported the grooming and sexual harassment to Accenture.

249.

In a clear act of revictimization, Accenture compounded the abuse Plaintiff Cole had already endured. Despite Plaintiff Cole's desperate and repeated requests for support in their recovery journey, Accenture denied them the necessary assistance to heal from the mental trauma and sexual abuse perpetrated by Defendant Young.

250.

Specifically, Accenture obstructed Plaintiff Cole's attempts to speak candidly with their colleagues about the ordeal. Plaintiff Cole sought to share their experiences authentically with those who were not only colleagues but who had also been in Defendant Young's home and worked alongside them. These were the very

individuals who could have offered Plaintiff Cole the understanding and support they needed during this gravely challenging time.

251.

Instead, Accenture encouraged Plaintiff Cole to limit their disclosure to their mental illness as if that was the only reason they were struggling at work.

252.

Defendant Young engaged in a calculated, extended, and extensive pattern of grooming and subjecting Plaintiff Cole to unwanted sexual advances, unwanted sexual communication involving his own secretive homosexual behaviors and desires, and unwelcomed physical touching of Plaintiff Cole throughout their work environment.

253.

As a result of the careless and reckless conduct of both Defendants Accenture and Young, Plaintiff Cole has suffered extreme and continuous emotional distress so severe as to constitute a likely permanent mental and physical injury.

254.

Defendant Young's misconduct created an unreasonable risk of causing emotional distress to Plaintiff Cole, and Defendant Young knew or should have

known that such conduct was likely to result in emotional distress that might and/or likely would cause illness or bodily harm.

255.

Plaintiff Cole's severe emotional distress was foreseeable to Defendants Accenture and Young because both Defendants they had actual knowledge of Plaintiff Cole's mental health history and susceptibility to mental injury.

256.

As a direct and proximate result of Defendants Accenture's and Young's conduct, Plaintiff Cole has suffered and continues to suffer harm, including physical injury, severe emotional distress, humiliation, anxiety, and other consequential damages for which they are entitled to an award of monetary damages and other relief.

**COUNT IX:**

**NEGLIGENT RETENTION**

*(Against Defendants Accenture, Shook, and Oakes)*

257.

Plaintiff re-alleges and incorporates the foregoing factual allegations in paragraphs 1 – 256 into Count IX as if fully set forth herein.

258.

The Court in *B.C.B. Co. v. Troutman*, held that "…Georgia law recognizes a cause of action for negligence against an employer where the employer, in the exercise of reasonable care, knew or should have known about an employee's reputation for sexual harassment, and where it was foreseeable that the employee would engage in harassment of a fellow employee, but he was nonetheless continued in his employment." 200 Ga. App. 671, 673, 409 S.E.2d 218 (1991).

259.

An "employer is bound to exercise ordinary care in the selection of employees and not to retain them after knowledge of incompetency." O.C.G.A. §34-7-20.

260.

Upon information and belief, during the course of his employment, Defendant Young shared with his Accenture colleagues that he left his Chief of Staff position with the Department of Agriculture without providing sufficient notice. He implied that the circumstances of his separation were not voluntary and upon information and belief, Mr. Young may have sexually harassed former subordinate.

261.

Here, Accenture, in the exercise of reasonable care, knew or should have known about Mr. Young's reputation for sexual harassment, and where it was

foreseeable that the employee would engage in harassment of a fellow employee, but he was nonetheless continued in his employment.

262.

On December 2, 2022, Plaintiff Cole reported to Defendants Accenture, Shook, and Oakes that Defendant Young had committed acts of sexual harassment, battery, and invasion of privacy against them for an extended period of time during the tenure of Plaintiff Cole's employment with Accenture. At this same time, Plaintiff Cole reported the severe emotional distress, depression, and suicidal ideations they had endured as a direct result of the conduct and lewd acts of Mr. Young.

263.

Not only did Defendants Accenture, Shook and Oakes not immediately suspend or remove Defendant Young from his position, pending further investigation, to prevent further injury to Plaintiff Cole and protect the safety and well-being of other Accenture employees, Defendants Accenture, Shook and Oakes put Plaintiff Cole on leave and left Defendant Young in his position. Plaintiff Cole's leave was not initially paid, possibly amounting to retaliation for their complaint against Defendant Young by Defendants Accenture, Shook and Oakes.

264.

Georgia courts have extended the tort of negligent retention to cases in which the employer negligently retains a sexual harasser. *See, Coleman v. Hous. Auth. of Americus*, 191 Ga. App. 166, 170-71, 381 S.E.2d 303, 307 (1989)( involving a claim of intentional infliction of emotional distress); *Favors v. Alco Mfg. Co.,* 186 Ga. App. 480, 483, 367 S.E.2d 328, 331 (1988) (asserting claims for sexual harassment, battery, and invasion of privacy); *Cox v. Brazo*, 165 S.E.2d 888, 889, 303 S.E.2d 71, 73 (1983)( (alleging an assault claim).

265.

Defendants Accenture, Shook and Oakes investigated the claims made by Plaintiff Cole against Defendant Young; however, Mr. Young was allowed to continue to work at Accenture during this period of time, including supervising Accenture employees, after such time as Defendants Accenture, Shook and Oakes had direct knowledge of Defendant Young's propensity to engage in battery and sexual harassment against employees under his supervision.

266.

After the conclusion of the investigation of Plaintiff Cole's allegations against Defendant Young, Accenture did not terminate Mr. Young or take any corrective action whatsoever against Mr. Young.

267.

In this instant action, even after Plaintiff Cole made an official report of sexual harassment, Accenture did not immediately remove him from his leadership or supervisory positions within the organization, including leading project work and teams, performing all his duties as the practice group leader for the Georgia Public Service group. *See, Cox v. Brazo*, 165 Ga. App. 888, 889, 303 S.E.2d 71, 73, aff'd, 251 Ga. 491, 307 S.E.2d 474 (1983) (finding employer liable for negligence in allowing a supervisor to remain in a supervisory position with notice of his proclivity to engage in sexually offensive conduct directed against female employees).

268.

In fact, rather than putting Mr. Young on leave while they conducted a thorough investigation into the claims, Accenture put the victim on unpaid leave pending the outcome of the investigation and expressly forbade them from speaking with anyone about the sexual harassment.

269.

Accenture protected Mr. Young's professional and personal reputation even after they had actual knowledge of his sexual misconduct and harassment of his subordinate and promoted him, both inside and outside of the company, and

continued to employ Defendant Young until his departure in January 2023.

270.

Not only did Plaintiff Cole report Defendant Young's malicious, outrageous, willful and wanton conduct to Defendant Accenture, they did so believing that their report would be taken seriously and immediate action would be taken by Accenture to protect Plaintiff Cole's safety and well-being, based on Accenture's own words and policy statements made through Ellyn Shook's LinkedIn article, "Zero Tolerance", specifically cited and referenced in Paragraph 5 of this Complaint.

271.

Willful and wanton conduct is conduct which shows "that entire absence of care which would raise the presumption of conscious indifference, or that with reckless indifference, the person acted with actual or imputed knowledge that the inevitable or probable consequences of his conduct would be to inflict injury." *H.J. Russell and Co. v. Jones*, 250 Ga. App. 28, 550 S.E.2d 450 (2001).

272.

In complete contradiction to Accenture's stated policies on sexual harassment, and malicious and outrageous conduct perpetrated by Mr. Young as a supervisor working under the direction of Accenture, Accenture did nothing to remove, reprimand or investigate any of the allegations reported by Plaintiff Cole against

Mr. Young.

273.

To the contrary, Accenture allowed Mr. Young to continue supervising employees, while under investigation of pervasive sexual grooming and harassment of a subordinate, until his voluntary departure. Accenture did this despite having actual knowledge of Mr. Young's tendency to engage in harassing and tortious conduct against employees, such as Plaintiff Cole, and the substantial likelihood that he would continue to engage in such misconduct.

274.

Accenture had actual and constructive knowledge of Defendant Young's misconduct and failed to act in any manner to protect Plaintiff Cole or any of their colleagues who also reported to Mr. Young. Accenture, therefore, condoned, adopted, and ratified Mr. Young's tortious conduct, making it liable for his tortious conduct.

275.

Given the voluntary nature of Defendant Young's departure from Accenture in January 2023, Accenture should not be able to claim any benefit or defense herein to the claim of Negligent Retention on the grounds that Defendant Young voluntarily left his employment with Accenture only a short time after Accenture's

investigation of Plaintiff Cole's claim was completed by Defendants Shook and Oakes.

276.

To the contrary, Accenture's complete failure to place Defendant Young on leave pending investigation to protect Plaintiff Cole and all other employees of Accenture, plus Accenture's complete failure to terminate Defendant Young, or take any measure of corrective action following the conclusion of the investigation, conclusively demonstrates that Accenture had no plan to remove or reprimand Defendant Young for his conduct in any way.

277.

Once Defendant Young made it known that he intended to leave his position, Defendants Accenture, Shook and Oakes promoted Defendant Young's tenure and service with Accenture and sent a message to all Accenture employees celebrating Defendant Young, despite his history of sexual misconduct, harassment, and battery against employees of Accenture, including Plaintiff Cole.

278.

The Plaintiff "must show that (defendant) had actual knowledge of harassment and did nothing about it…". *Baldwin v. Blue Cross/Blue Shield of Ala.*, 480 F.3d 1287, 1309 (11th Cir. 2007). Not only did Defendants Accenture, Shook

and Oakes have actual knowledge of the sexual misconduct, battery and harassment committed by Defendant Young against Plaintiff Cole, but the harm to Plaintiff Cole from the Defendants' actions and failures to act after Defendant Young's malicious, outrageous, wanton, and willful conduct was reported was entirely foreseeable.

279.

In *Farrell v. Time Service, Inc. 178 F. Supp. 2d 1300*, the Court held that "A claim for negligent hiring, retention, or supervision arises under Georgia law when an employer negligent hires, retains or supervises an employee and that employee subsequently harms the plaintiff."

280.

Here, Defendants Accenture, Shook and Oakes had actual knowledge of Mr. Young's sexual grooming, harassment, and battery committed against Plaintiff Cole, and yet they still chose to keep Mr. Young in his supervisory and leadership position.

281.

Plaintiff Cole was put on immediate leave and not permitted to continue working until after Defendant Young had chosen to leave to company voluntarily, causing significant continued and on-going injury to Plaintiff Cole after their report to Accenture management.

98

282.

Defendants Accenture, Shook and Oakes celebrated the tenure of Defendant Young, and sent a message of well wishes to all employees of Accenture after his voluntary departure from the company, causing continued humiliation, stress, and injury to Plaintiff Cole.

283.

The harm to Plaintiff Cole from Accenture's actions and failures to act after Defendant Young's malicious, outrageous, wanton, and willful conduct was reported was entirely foreseeable.

284.

As a direct and proximate result of all the Defendants' conduct, Plaintiff Cole has suffered and continues to suffer harm, including physical injury, severe emotional distress, humiliation, anxiety, and other consequential damages for which they are entitled to an award of monetary damages and other relief.

285.

Defendants are liable for all general and special damages proximately resulting from its negligent hiring, training, supervision, and retention of Mr. Young.

## COUNT X:

## PUNITIVE DAMAGES

*(Against Defendants Accenture, Young, Shook, and Oakes)*

286.

Plaintiff re-alleges and incorporates the foregoing factual allegations in paragraphs 1 – 285 into Count X as if fully set forth herein.

287.

Georgia law allows for pain and suffering damages where a plaintiff suffers a physical injury or pecuniary loss. *Wells by Maihafer v. Ortho Pharm. Corp.,* 615 F.Supp. 262, 297 (N.D.Ga.1985) (citing *Westview Cemetery, Inc. v. Blanchard,* 234 Ga. 540, 216 S.E.2d 776 (1975)), *modified in part on other grounds,* 788 F.2d 741 (11th Cir.1986).

288.

By reason of the foregoing, Plaintiff Cole is entitled to recover damages from Accenture as well as Defendants Young, Shook, and Oakes, both in their professional and individual capacities, for past, present, and future medical expenses related to the damage they experienced caused by Defendants' actions (and inactions), specific amounts to be proven at trial and compensatory damages for past, current, and future physical and mental suffering, pain, emotional distress and harm, in such an amount

as may be shown by the evidence and determined by the enlightened conscious of the jury.

## DEMAND FOR JURY TRIAL

Plaintiff requests a jury trial on all questions of fact and damages raised by this Complaint.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for the following:

(a)   trial by a twelve (12) person jury;

(b)   actual damages in an amount to be proven at trial;

(c)   consequential damages in an amount to be determined at trial;

(d)   general damages in an amount to be determined at trial;

(e)   statutory damages for each statutory violation as described herein in an amount to be determined at trial;

(f)   exemplary/punitive damages in an amount to be determined at trial;

(g)   reasonable attorney's fees, costs and expenses to the fullest extent permitted by law;

(h)   interest as allowed by law; and

(i)   for any other such further relief as this Court or trier of fact

deems just and proper.

Respectfully submitted this 2nd day of May, 2024.

                          */s/ Frederica Joy White*
                          Frederica Joy White
                          GA Bar No. 753400
                          The White Legal Group LLC
                          1450 W Peachtree Street NW
                          #200 PMB 56702
                          Atlanta, Georgia 30309
                          (404) 394-8344
                          jwhite@thewhitelegalgroup.com

                          **Attorney for Plaintiff Haley Cole**

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on May 2, 2024, I electronically filed the foregoing **FIRST AMENDED VERIFIED COMPLAINT FOR DAMAGES** using the CM/ECF system which will automatically send e-mail notification of such filing to the following attorney of record for following named defendants: ***Accenture, Ellyn Shook, and Ryan Oakes:***

Jennifer Snelling
LITTLER MENDELSON
321 N Clark St, Suite 1100
Chicago, Illinois 60654
JSchilling@littler.com

I further certify that the following named defendant will be served with a summons by a process server within the relevant time period:

**Mr. Lawrence Christopher Young**
Marietta, Georgia 30060

*/s/ Frederica Joy White*
Frederica Joy White
Georgia Bar No. 753400

**THE WHITE LEGAL GROUP LLC**
1450 W. Peachtree Street, N.W.
#200, PMB 56702
Atlanta, Georgia 30309
Telephone: (404) 394-8344
Email: jwhite@thewhitelegalgroup.com

103