# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA

HALEY COLE,

          *Plaintiff*,

    *v.*

ACCENTURE LLP and LAWRENCE
CHRISTOPHER YOUNG, ELLYN
SHOOK, and RYAN OAKES in their
individual and professional capacities,

          *Defendants.*

No. 1:24-cv-1897-MHC-JKL

JURY TRIAL DEMANDED

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT
## ACCENTURE LLP'S MOTION TO DISMISS
## <u>PLAINTIFF'S FIRST AMENDED COMPLAINT</u>

# TABLE OF CONTENTS

INTRODUCTION ................................................................................. 1

BACKGROUND .................................................................................. 2

LEGAL STANDARD ........................................................................... 6

ARGUMENT ...................................................................................... 6

I.   FOUR OF PLAINTIFF'S CLAIMS ARE UNTIMELY AND MUST
     BE DISMISSED. .......................................................................... 6

     A.   Three Of Plaintiff's Title VII Claims Are Time-Barred. ............... 6

     B.   Plaintiff's Claim For Intentional Infliction Of Emotional
          Distress ("IIED") Is Time-Barred. ........................................... 8

II.  PLAINTIFF FAILS TO STATE A TITLE VII CLAIM. ......................... 9

     A.   Plaintiff Fails To State A Sex Discrimination Claim. ................ 9

     B.   Plaintiff Fails To State A Hostile Work Environment Claim. .... 10

     C.   Plaintiff Fails To State A Constructive Discharge Claim. ......... 13

     D.   Plaintiff Fails To State A Retaliation Claim. ........................... 15

III. PLAINTIFF'S TORT CLAIMS FAIL AS A MATTER OF LAW............ 18

     A.   Accenture Is Not Vicariously Liable For Young's Alleged Torts
          (Counts V, VII). ................................................................. 18

     B.   Plaintiff Fails To State A Tort Claim Based On Any Alleged
          Conduct By Accenture (Counts VIII, IX). ............................... 21

CONCLUSION ................................................................................. 25

# TABLE OF AUTHORITIES

Page(s)

## Cases

*Alpharetta First United Methodist Church v. Stewart*,
    472 S.E.2d 532 (Ga. Ct. App. 1996) ........................................................... 20

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) ................................................................................. 6, 12

*Baker v. City of Madison*,
    67 F.4th 1268 (11th Cir. 2023) .......................................................................5

*Baldwin v. Blue Cross/Blue Shield of Ala.*,
    480 F.3d 1287 (11th Cir. 2007) ................................................................... 13

*Baynes v. Philips Med. Sys. (Cleveland), Inc.*,
    2009 WL 3158180 (N.D. Ga. Sept. 25, 2009) ................................................8

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007) .......................................................................................6

*Benson v. Deere & Co.*,
    2019 WL 12382920 (N.D. Ga. May 10, 2019) ........................... 18, 19, 20, 23

*Blanco v. Brogan*,
    2007 WL 9819222 (S.D.N.Y. Nov. 21, 2007) .............................................. 13

*Boulware v. Quiktrip Corp.*,
    486 S.E.2d 662 (Ga. Ct. App. 1997) .......................................................... 24

*Bowens v. Sodexo, Inc.*,
    2019 WL 13268194 (N.D. Ga. Feb. 14, 2019) ................................. 21, 22, 23

*Brady v. Harris Ventures Inc.*,
    2022 WL 22288351 (N.D. Ga. Feb. 3, 2022) .............................................. 24

*Brown v. K&G Men's Ctr., Inc.*,
    2009 WL 10665772 (N.D. Ga. Apr. 28, 2009) ............................................ 14

*Buford v. Life Storage, LP*,
    2019 WL 13031988 (N.D. Ga. Oct. 17, 2019) ............................................ 16

*Carwell v. PNC Bank, N.A.,*
  2018 WL 11483367 (N.D. Ga. Oct. 19, 2018)................................. 11

*Clark v. Alloy Wheel Repair Specialists, LLC,*
  2019 WL 13292972 (N.D. Ga. Dec. 19, 2019) ............................ 20

*Clayton v. Dreamstyle Remodeling of Colo., LLC,*
  2022 WL 910957 (D. Colo. Mar. 28, 2022)................................. 17

*Collins v. Sch. Bd. of Pinellas Cnty.,*
  2020 WL 6801865 (M.D. Fl. Nov. 19, 2020)................................ 14

*Cramer v. Bojangles' Rests., Inc.,*
  2012 WL 716176 (N.D. Ga. Feb. 8, 2012) .................................. 19

*Crenshaw v. Lister,*
  556 F.3d 1283 (11th Cir. 2009)...................................................5

*DaimlerChrysler Motors Co. v. Clemente,*
  668 S.E.2d 737 (Ga. Ct. App. 2008) ........................................ 19

*Dar Dar v. Associated Outdoor Club, Inc.,*
  248 F. App'x 82 (11th Cir. 2007) ............................................. 11

*Davis v. O'Rourke,*
  2018 WL 8997476 (N.D. Ga. July 18, 2018) .............................. 16

*Doe v. Fulton-DeKalb Hosp. Auth.,*
  628 F.3d 1325 (11th Cir. 2010)................................................. 20

*Eley v. Fedee,*
  869 S.E.2d 566 (Ga. Ct. App. 2022) ......................................... 23

*Evans v. Atlanta Pub. Schs.,*
  2016 WL 6824422 (N.D. Ga. Sept. 20, 2016)......................... 9, 10

*Farrell v. Time Serv., Inc.,*
  178 F. Supp. 2d 1295 (N.D. Ga. 2001) ..................................... 24

*Garcia v. Spun Steak Co.,*
  998 F.2d 1480 (9th Cir. 1993)................................................... 17

*Goldberg v. Nat'l Union Fire Ins. Co. of Pittsburgh,*
  143 F. Supp. 3d 1283 (S.D. Fla. 2015) .......................................5

iii

*Greene v. Ala. Dep't of Revenue*,
746 F. App'x 929 (11th Cir. 2018) ......................................................... 15, 16

*Griffin Indus., Inc. v. Irvin*,
496 F.3d 1189 (11th Cir. 2007).................................................................. 15

*Hadley v. Bank of Am., N.A.*,
2018 WL 4656426 (N.D. Ga. Aug. 27, 2018)............................................... 22

*Harris v. Forklift Sys., Inc.*,
510 U.S. 17 (1993) .................................................................................... 10

*Hawthorne v. DeJoy*,
2023 WL 5987406 (N.D. Ga. June 27, 2023) .................................................9

*Hipp v. Liberty Nat'l Life Ins. Co.*,
252 F.3d 1208 (11th Cir. 2001).................................................................. 13

*Hobson v. Delta Airlines*,
2023 WL 9116590 (N.D. Ga. July 28, 2023) .......................................... 7, 15

*Ivey v. Savannah-Chatham Pub. Schs.*,
2021 WL 3549901 (S.D. Ga. Aug. 11, 2021) .................................................8

*Jenkins v. MCG Health, Inc.*,
2008 WL 116335 (S.D. Ga. Jan. 7, 2008) ................................................... 16

*Lockett v. Choice Hotels Int'l, Inc.*,
315 F. App'x 862 (11th Cir. 2009) .............................................................. 11

*McCrae v. Emory Univ.*,
2023 WL 6217372 (N.D. Ga. May 24, 2023) ............................................... 14

*McCrary v. Middle Ga. Mgmt. Servs., Inc.*,
726 S.E.2d 740 (Ga. Ct. App. 2012) .......................................................... 22

*Mears v. Gulfstream Aerospace Corp.*,
484 S.E.2d 659 (Ga. Ct. App. 1997) ............................................................8

*Mitchell v. Univ. of N. Ala.*,
785 F. App'x 730 (11th Cir. 2019) .............................................................. 16

*Moore v. Emory Healthcare, Inc.*,
2023 WL 9689030 (N.D. Ga. July 3, 2023) ................................................. 12

iv

*Moore v. San Carlos Park Fire Prot. & Rescue,*
    808 F. App'x 789 (11th Cir. 2020) .............................................................. 14

*Mountain v. S. Bell Tel. & Tel. Co.,*
    421 S.E.2d 284 (Ga. Ct. App. 1992) ....................................................... 20, 21

*Muldrow v. City of St. Louis,*
    144 S. Ct. 967 (2024) .................................................................................. 17

*Nat'l R.R. Passenger Corp. v. Morgan,*
    536 U.S. 101 (2002) ...................................................................................... 7

*Ogletree v. Necco,*
    2016 WL 7010869 (N.D. Ga. Nov. 30, 2016) ......................................... 10, 12

*Palmer v. McDonald,*
    624 F. App'x 699 (11th Cir. 2015) .............................................................. 14

*Piedmont Hosp., Inc. v. Palladino,*
    580 S.E.2d 215 (Ga. 2003) ......................................................................... 20

*Rogers v. Bon Appetit Mgmt. Co.,*
    2023 WL 4629544 (N.D. Ga. July 19, 2023) ......................................... 24, 25

*Sims v. Chase Home Fin., LLC,*
    2011 WL 13176725 (N.D. Ga. Aug. 30, 2011) ............................................ 23

*Slater v. McKinsey & Co.,*
    530 F. Supp. 3d 1318 (N.D. Ga. 2021) ....................................................... 24

*Smith v. City of Fort Pierce,*
    565 F. App'x 774 (11th Cir. 2014) .............................................................. 15

*Stewart v. Storch,*
    617 S.E.2d 218 (Ga. Ct. App. 2005) ........................................................... 20

*Terrafranca v. Virgin Atl. Airways Ltd.,*
    151 F.3d 108 (3d Cir. 1998) ....................................................................... 23

*Travis Pruitt & Assocs., P.C. v. Hooper,*
    625 S.E.2d 445 (Ga. Ct. App. 2005) ........................................................... 19

*White v. Atlanta Indep. Sch. Sys.,*
    2021 WL 12218868 (N.D. Ga. Dec. 1, 2021) ............................................. 10

*Wilkerson v. Grinnell Corp.*,
   270 F.3d 1314 (11th Cir. 2001)............................................................6

*Wood v. City of Cordele*,
   2013 WL 5952165 (M.D. Ga. Nov. 6, 2013) ..................................7

**Statutes**

42 U.S.C. § 2000e-5.................................................................................6

Ga. Code Ann. § 9-3-33 ...........................................................................8

Ga. Code Ann. § 34-9-11 ....................................................................... 23

## INTRODUCTION

Plaintiff Haley Cole seeks to hold Accenture LLP liable for alleged sexual harassment by Plaintiff's former supervisor, defendant Larry Christopher Young.[1]  Plaintiff asserts that Young's last act of misconduct took place on January 1, 2022.  When Plaintiff reported this incident to Accenture nearly a year later, on December 2, 2022, Accenture took the steps that would be expected of a responsible employer: it allowed Plaintiff to continue a long-running leave of absence, investigated Plaintiff's complaint, and terminated Young.  FAC ¶¶ 102, 105, 108.  Accenture then afforded Plaintiff additional medical leave in 2023 and approved Plaintiff's request for long-term disability leave in 2024.  *Id.* ¶¶ 129, 133; Ex. C.  Plaintiff nonetheless abruptly resigned, claiming the office had become "intolerable" even as Plaintiff remained absent from it and Young had long been terminated.  FAC ¶¶ 130, 134, 202.

Plaintiff now brings a litany of Title VII and state tort claims alleging that Accenture is not only vicariously liable for Young's misconduct, but also directly liable for providing Plaintiff with insufficient "support" in their "recovery journey."  FAC ¶¶ 193, 249.  Plaintiff's claims are long out of time and factually and legally baseless.  Plaintiff's theory is that Accenture "discouraged" them "from discussing the events that led to their leave of

---

[1]  Plaintiff uses the pronouns "they / them / theirs."  FAC ¶ 163.

absence." *Id.* ¶ 212.  But the law does not afford Plaintiff a right to "share their experiences to facilitate trauma recovery" or "form authentic connections with colleagues."  *Id.* ¶¶ 209, 211.  This Court should dismiss all claims against Accenture with prejudice.

## BACKGROUND

Defendant Accenture LLP hired Plaintiff as a management consulting analyst in May 2016.  FAC ¶ 20.[2]  Well before the start of their employment, Plaintiff had a long history of mental health challenges.  Plaintiff has managed "severe depression and anxiety since high school" and experienced "abuse . . . from the church they attended in college."  *Id.* ¶¶ 92, 94.  At Accenture, Plaintiff took advantage of "well-being initiatives within the . . . workplace" and "actively advised" colleagues on the robust "mental health resources provided by Accenture," including "helpful options such as medical leaves of absence."  *Id.* ¶ 28.  In June 2021, Accenture "promoted" Plaintiff and gave them a "salary increase."  *Id.* ¶¶ 42, 96.

Plaintiff, who identifies as "an autistic, non-binary individual," started reporting to Young in January 2020.  FAC ¶¶ 7, 37.  Plaintiff and Young developed a personal friendship.  Young confided in Plaintiff that "they were the only person he could talk to" about his romantic life "because he was not

---

[2] Accenture accepts the factual allegations of the first amended complaint as true solely for purposes of this motion to dismiss.

openly gay in his professional environment," and Plaintiff in turn "disclosed a painful family incident" to Young. *Id.* ¶¶ 53, 93. Plaintiff also attended an annual "Friendsgiving" celebration at Young's home. *Id.* ¶¶ 45, 48. On New Year's Day in 2022, away from Accenture's office, Plaintiff and Young exchanged texts in which Young "shar[ed] sexually intimate details of his relationship with his boyfriend" and "inquir[ed] about" Plaintiff's "romantic life." *Id.* ¶ 58. Young sent sexual images to Plaintiff, and at Young's request, Plaintiff shared "personal images." *Id.* ¶¶ 63–64. Young and Plaintiff then had a "sexual encounter" on a "live video call." *Id.* ¶¶ 66–68.

Plaintiff did not report this incident to Accenture at the time. In April 2022, Plaintiff "took the first of several intermittent leaves of absence." FAC ¶ 81. Plaintiff returned to work on May 31, 2022, but took another "medical leave" six weeks later, on July 10, 2022. *Id.* ¶¶ 82, 86. They entered "a partial hospitalization program" in August 2022 and transferred to "a sober living program" in November 2022. *Id.* ¶¶ 88–89. In December 2022, while Plaintiff "was still out of the office" on leave, Plaintiff "receiv[ed] a bonus and raise" from Accenture. *Id.* ¶ 97.

On December 2, 2022, Plaintiff "reported" Young's "sexual harassment to Accenture's complaint hotline." FAC ¶ 100. Three days later, on December 5, 2022, Plaintiff met with an Accenture employee relations manager and an Accenture associate director of corporate investigations "to provide a more

3

detailed report." *Id.* ¶ 101. "Throughout December 2022 and January 2023, Accenture investigated," informing Plaintiff on January 10, 2023, that "Young would no longer be employed by Accenture." *Id.* ¶¶ 105, 107. Plaintiff remained on paid leave during the investigation and did "not return to work until the investigation had concluded." *Id.* ¶ 102.

Plaintiff alleges that, upon their return to work on January 18, 2023, "they discovered that they had been assigned to a new team." FAC ¶¶ 109, 115. In fact, as one of the exhibits attached to the complaint makes clear, Plaintiff "*asked* to be transferred to another team," Ex. C (emphasis added)— a request Accenture granted, FAC ¶ 115. Soon after, Plaintiff sought permission to tell their new supervisor that the Young incident was "continuing to negatively impact their work performance," *id.* ¶ 125, and the employee relations manager agreed Plaintiff could "share" their mental health struggles as an "explanation . . . for any work performance issues," *id.* ¶ 127.

On May 31, 2023, Plaintiff took "another leave of absence from work." FAC ¶ 130. On October 31, 2023, "while still out on medical leave," Plaintiff informed the employee relations manager of "their intention to report" Young's "sexual misconduct" to an Accenture client. *Id.* ¶ 134; Ex. 1.[3] The manager

---

[3] The Court may consider this exhibit—an email from the employee relations manager to Plaintiff—because it is incorporated by reference in ¶ 139 of the

responded:  "If you feel it is in your best interest to discuss this with the client, we are not opposed."  Ex. 1.  The manager also confirmed that Plaintiff "could talk to their coworkers about . . . Young's sexual harassment."  FAC ¶ 139.  She explained that Accenture's previous request that Plaintiff "not . . . discuss the matter" applied only "while the investigation was ongoing to ensure the matter was handled sensitively and confidentially."  Ex. 1.  Because the investigation had "closed," the manager continued, "you are able to discuss whatever you feel is necessary with the appropriate parties—that is at your discretion."  *Id.*

On December 21, 2023, five weeks later and while Plaintiff was still on leave, Plaintiff resigned.  FAC ¶ 155.  Although Plaintiff had recently "been approved for long term disability through November 2024," Plaintiff purportedly had "come to realize [they] ha[d] no other choice but to terminate [their] employment with Accenture."  Ex. C.  One week later, on December 29, 2023, Plaintiff filed a charge of discrimination with the EEOC.  After the EEOC issued a notice of right to sue, Plaintiff filed this lawsuit on April 30, 2024, and filed the operative first amended complaint on May 2, 2024.

---

complaint.  *See Baker v. City of Madison*, 67 F.4th 1268, 1276 (11th Cir. 2023). Where documents incorporated by reference into the complaint "contradict [its] allegations," "the exhibits govern."  *Goldberg v. Nat'l Union Fire Ins. Co. of Pittsburgh*, 143 F. Supp. 3d 1283, 1291 (S.D. Fla. 2015); *see also Crenshaw v. Lister*, 556 F.3d 1283, 1292 (11th Cir. 2009) (per curiam).

## LEGAL STANDARD

To survive a motion to dismiss, a complaint must "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Although courts generally "must accept as true all of the allegations" in a complaint, that rule is "inapplicable to legal conclusions," *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), and the "[f]actual allegations must be enough to raise a right to relief above the speculative level," *Twombly*, 550 U.S. at 555.

## ARGUMENT

## I.   Four Of Plaintiff's Claims Are Untimely And Must Be Dismissed.

Plaintiff's claims of sex discrimination (Count I), hostile work environment (Count II), and retaliation (Count IV) under Title VII and their claim for intentional infliction of emotional distress (Count VII) are time-barred and should be dismissed.

### A.   Three Of Plaintiff's Title VII Claims Are Time-Barred.

A plaintiff asserting a claim under Title VII must first exhaust his administrative remedies by filing a charge with the EEOC within 180 days "after the alleged unlawful employment practice occurred." 42 U.S.C. § 2000e-5(e)(1); *Wilkerson v. Grinnell Corp.*, 270 F.3d 1314, 1317 (11th Cir. 2001). Here, Plaintiff filed their EEOC charge on December 29, 2023. FAC ¶ 16. Plaintiff therefore cannot recover for any allegedly discriminatory conduct that occurred before July 2, 2023—and Plaintiff has either been on medical leave or

not employed by Accenture since that date.  FAC ¶¶ 130, 134.

***Discrimination (Count 1).***  Plaintiff's Title VII discrimination claim rests exclusively on Young's alleged harassment that "[s]tart[ed] in 2020[,] . . . persist[ed] through December 2022," and necessarily ended by January 18, 2023, Young's last day at Accenture.  FAC ¶¶ 108, 164–75.  Because the last allegedly "discriminatory acts" occurred well before July 2, 2023, the sex discrimination claim is time-barred.  *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 113 (2002); *see Hobson v. Delta Airlines*, 2023 WL 9116590, at *4 (N.D. Ga. July 28, 2023) (dismissing claim because "allegedly discriminatory" acts necessarily "occurred more than 180 days before" EEOC charge).

***Hostile Work Environment (Count II).***  A hostile work environment claim is timely "so long as all acts which constitute the claim are part of the same unlawful employment practice and at least one act falls within the time period." *Morgan*, 536 U.S. at 122.  As with the discrimination claim, Plaintiff's hostile work environment claim is premised entirely on Young's alleged sexual misconduct, which ended on or before his January 18, 2023 termination date. FAC ¶ 191.  For the same reasons, this claim too is untimely.  *See Wood v. City of Cordele*, 2013 WL 5952165, at *5 (M.D. Ga. Nov. 6, 2013) (dismissing hostile work environment claim because "none of [the] alleged incidents related to a hostile work environment" "occurred within 180 days" of the EEOC charge).

***Retaliation (Count IV).***  Plaintiff alleges that Accenture retaliated

7

against them by reassigning Plaintiff to a different team upon their return from leave on January 18, 2023, FAC ¶¶ 109, 115; sending an email "publicly praising" Young on January 19, 2023, *id.* ¶¶ 110, 213; and instructing Plaintiff in December 2022 and March 2023 "not to disclose" Young's conduct to colleagues, *id.* ¶¶ 104, 126, 208. Because all of this activity predated the EEOC charge by more than 180 days, Plaintiff's retaliation claim must be dismissed. *See Ivey v. Savannah-Chatham Pub. Schs.*, 2021 WL 3549901, at *10 (S.D. Ga. Aug. 11, 2021) (dismissing retaliation claim as time-barred because all "identifiable acts" of retaliation occurred prior to the administrative exhaustion period).

### B.    Plaintiff's Claim For Intentional Infliction Of Emotional Distress ("IIED") Is Time-Barred.

Plaintiff's tort claims are subject to a two-year statute of limitations. Ga. Code Ann. § 9-3-33; *Mears v. Gulfstream Aerospace Corp.*, 484 S.E.2d 659, 663 (Ga. Ct. App. 1997). Plaintiff's IIED claim does not clear the two-year time bar because it turns on the texts and video call with Young that took place on January 1, 2022—more than two years before the April 30, 2024, complaint. FAC ¶¶ 68, 235. Even if Plaintiff were to argue that this claim did not accrue until they took their first leave of absence to address the "mental health impact" of this event, that leave began on April 1, 2022—outside the limitations period. *Id.* ¶ 81; *see also Baynes v. Philips Med. Sys., (Cleveland),*

*Inc.*, 2009 WL 3158180, at *2 (N.D. Ga. Sept. 25, 2009).

## II.      Plaintiff Fails To State A Title VII Claim.

### A.      Plaintiff Fails To State A Sex Discrimination Claim.

Even if it were timely, Plaintiff's claim of sex discrimination (Count I) based on their identity as a "queer and a non-binary individual," FAC ¶¶ 163, 165, fails on the merits.  To state a discrimination claim under Title VII, the plaintiff must "allege . . . facts that would allow the court to draw the reasonable inference that defendant subjected [them] to an adverse employment action *because of* [their] race or sex."  *Hawthorne v. DeJoy*, 2023 WL 5987406, at *4 (N.D. Ga. June 27, 2023), *adopted by* 2023 WL 5350781 (N.D. Ga. Aug. 21, 2023) (emphasis added).  A Title VII discrimination claim "can take the form either of a 'tangible employment action,' such as a firing or demotion, or of a 'hostile work environment' that changes 'the terms and conditions of employment.'"  *Evans v. Atlanta Pub. Schs.*, 2016 WL 6824422, at *4 (N.D. Ga. Sept. 20, 2016).  Plaintiff alleges neither.

To the extent Plaintiff's discrimination claim is based on a "tangible employment action," Plaintiff makes only the conclusory allegation that they were "deprived of professional advancements, opportunities for growth, and inclusivity."  FAC ¶ 173.  But Plaintiff fails to identify these alleged forfeited opportunities and instead admits they were "promoted" and received a "salary increase" in June 2021, *id.* ¶¶ 42, 96, and "a bonus and raise" in December

9

2022, *id.* ¶ 97.  Plaintiff also fails to state a hostile work environment claim for the reasons explained in Section II.B, *infra*.  As a result, they cannot bring a gender discrimination claim on this theory either.

Even if Plaintiff had adequately alleged an adverse action, Plaintiff "has pleaded no facts indicating any correlation between" their gender identity or sexual orientation and any "adverse action." *White v. Atlanta Indep. Sch. Sys.*, 2021 WL 12218868, at *8 (N.D. Ga. Dec. 1, 2021), *adopted by* 2021 WL 12218878 (N.D. Ga. Dec. 20, 2021).  There are simply "no allegations that Plaintiff was treated differently . . . *because of* [their] gender." *Evans*, 2016 WL 6824422, at *4 (emphasis added).  The claim should therefore be dismissed.

**B.    Plaintiff Fails To State A Hostile Work Environment Claim.**

Plaintiff's hostile work environment claim (Count II) also fails as a matter of law.  Although Young's alleged conduct was inappropriate, the allegations do not rise to the level of a Title VII violation for which Accenture could be liable.  To state a hostile work environment claim under Title VII, a plaintiff must allege that they were subjected to conduct that "is sufficiently severe or pervasive to alter the conditions of the victim's employment." *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993) (quotation marks omitted).  The severe or pervasive requirement contains "both subjective and objective components." *Ogletree v. Necco*, 2016 WL 7010869, at *6 (N.D. Ga. Nov. 30, 2016).  Plaintiff fails to satisfy these requirements.

Plaintiff's hostile work environment claim rests on the January 1, 2022, encounter with Young.  FAC ¶¶ 184–86.  "When a hostile work environment claim is based upon isolated incidents, the harassment must be 'extremely serious,' and must involve at least intentional touching of the [plaintiff's] intimate body areas." *Carwell v. PNC Bank, N.A.*, 2018 WL 11483367, at *4 (N.D. Ga. Oct. 19, 2018), *adopted by* 2018 WL 11483360 (N.D. Ga. Dec. 10, 2018); *see also Lockett v. Choice Hotels Int'l, Inc.*, 315 F. App'x 862, 866 (11th Cir. 2009) ("sexual remarks and two incidents of brief touching fall below the minimum level of severity"); *Dar Dar v. Assoc. Outdoor Club, Inc.*, 248 F. App'x 82, 85 (11th Cir. 2007) ("two sexually inappropriate comments and two incidents of intentional buttocks touching" in 22 months did not constitute hostile work environment).  The January 1, 2022, encounter was an "isolated incident[]" that did not involve any physical contact, *Carwell*, 2018 WL 11483367, at *4, and instead occurred through "text messages" and a "video call," FAC ¶¶ 59, 67.  Young's alleged conduct was unacceptable, and Accenture terminated his employment after investigating Plaintiff's complaint.  *Id.* ¶¶ 107–08.  Nevertheless, the incident "does not rise to [the] level of pervasiveness or severity required" for a hostile work environment claim. *Carwell*, 2018 WL 11483367, at *4.

Plaintiff's allegations that Young (1) "forcibly hugged" them during a single client meeting in 2022, FAC ¶¶ 84, 181; (2) discussed his "homosexual

desires" and "clandestine relationship with a man" with Plaintiff, *id.* ¶¶ 54, 179; and (3) "inquired" during a gathering at his home whether Plaintiff "was clothed or unclothed during a sensory deprivation session," *id.* ¶ 55, likewise do not allege sufficiently severe or pervasive conduct. *See, e.g.*, *Ogletree*, 2016 WL 11467577, at *12 (deeming allegations that a supervisor "asked [plaintiff] about her sex life" and "hugged her" insufficiently severe). Although this conduct allegedly occurred over multiple years, Plaintiff offers "a dearth of allegations indicating how frequently" it occurred within the relevant time period. *Moore v. Emory Healthcare, Inc.*, 2023 WL 9689030, at *9 (N.D. Ga. July 3, 2023) ("offensive conduct must occur on a very frequent basis to constitute a hostile work environment"). Although Plaintiff charges that Young's conduct was "repeated," "frequent," and "continuous," FAC ¶¶ 167–68, 179, the Court need not accept such "naked assertions devoid of further factual enhancement," *Iqbal*, 556 U.S. at 678 (alterations omitted); *see also Ogletree*, 2016 WL 11467577, at *11 (dismissing similar conclusory allegations).

Even if Plaintiff had stated a hostile work environment claim based on Young's alleged misconduct, which they have not, Plaintiff's own allegations establish that Accenture has a dispositive *Faragher-Ellerth* defense. That defense precludes employer liability where, as here, the company (1) "exercised reasonable care to prevent and correct promptly any sexually harassing behavior" and (2) Plaintiff "unreasonably failed to take advantage of any

12

preventive or corrective opportunities it provided." *Baldwin v. Blue Cross/Blue Shield of Ala.*, 480 F.3d 1287, 1303 (11th Cir. 2007) (alterations omitted). As alleged in the complaint, Accenture maintains a "zero tolerance" policy for "sexual harassment" and took remedial action as soon as Plaintiff reported Young, investigating Plaintiff's complaint and terminating Young's employment. FAC ¶¶ 100–01, 105, 107, 144. Plaintiff simply failed to invoke the company's robust protections for nearly a year after the New Year's Day 2022 incident—and long after the other alleged harassing behavior. *Id.* ¶¶ 100, 182. Thus, even if Plaintiff adequately alleged a hostile work environment, which they have not, the claim "will[] in any event be barred by the *Faragher-Ellerth* [d]efense." *Blanco v. Brogan*, 2007 WL 9819222, at *3 (S.D.N.Y. Nov. 21, 2007) (granting motion to dismiss based on *Faragher-Ellerth* defense).

## C.   Plaintiff Fails To State A Constructive Discharge Claim.

Plaintiff fails to plausibly allege that their resignation amounted to a constructive discharge (Count III). To state a constructive discharge claim, a plaintiff must allege that "working conditions were so intolerable that a reasonable person in [their] position would have been compelled to resign." *Hipp v. Liberty Nat'l Life Ins. Co.*, 252 F.3d 1208, 1231 (11th Cir. 2001). The threshold for constructive discharge is "quite high"—even "higher than the standard" for "a hostile work environment." *Id.* Because Plaintiff "cannot

13

show a hostile working environment" for the reasons explained above, they "likewise cannot meet the higher standard" for constructive discharge. *Palmer v. McDonald*, 624 F. App'x 699, 704 (11th Cir. 2015).

Even if Plaintiff had adequately alleged a hostile work environment, Plaintiff's constructive discharge claim still fails because Plaintiff resigned on December 21, 2023—"two years" after Young's alleged harassment ended, FAC ¶ 200, and nearly a year after he left Accenture, *id.* ¶ 108. This "significant delay" between the "cessation of" the harassment and Plaintiff's resignation "precludes a finding" that their "working conditions [were] so intolerable" as to compel a resignation. *Brown v. K&G Men's Ctr., Inc.*, 2009 WL 10665772, at *9–10 (N.D. Ga. Apr. 28, 2009); *see also Moore v. San Carlos Park Fire Prot. & Rescue*, 808 F. App'x 789, 798 (11th Cir. 2020) (no constructive discharge where there was "a three-month gap" between discrimination and plaintiff's resignation); *McCrae v. Emory Univ.*, 2023 WL 6217372, at *11 (N.D. Ga. May 24, 2023) (similar), *adopted by* 2023 WL 6217376 (N.D. Ga. July 12, 2023). Plaintiff also fails to allege any plausible theory for how their working conditions could be "so intolerable" that they would be forced to resign when they were on leave for seven months preceding their resignation—and had received approval for disability leave through November 2024. *Collins v. Sch. Bd. of Pinellas Cnty.*, 2020 WL 6801865, at *9 (M.D. Fl. Nov. 19, 2020) (plaintiff's working conditions were not "objectively intolerable" when she had

14

been on "a continuous leave of absence" for six months before her resignation).

### D.   Plaintiff Fails To State A Retaliation Claim.

Plaintiff's retaliation claim (Count IV) must be dismissed because Plaintiff fails to allege they "suffered an adverse employment action" because of any protected activity. *Greene v. Ala. Dep't of Revenue*, 746 F. App'x 929, 931 (11th Cir. 2018).   An adverse employment action "alters the employee's compensation, terms, conditions, or privileges of employment, deprives [them] of employment opportunities, or adversely affects [their] status as an employee." *Hobson*, 2023 WL 9115690, at *6.   An adverse action must be "materially adverse," meaning it "might have dissuaded a reasonable worker from making . . . a charge of discrimination." *Smith v. City of Fort Pierce*, 565 F. App'x 774, 777–78 (11th Cir. 2014).   Plaintiff's allegations fall far short of this standard.

Plaintiff alleges they were "transfer[red] to a less prestigious position upon their return to work in January 2023" in retaliation for their complaint. FAC ¶ 215.   But Plaintiff's resignation letter, which is attached as an exhibit to the complaint, plainly states that they "*asked* to be transferred to another team." Ex. C (emphasis added); *see Griffin Indus., Inc. v. Irvin*, 496 F.3d 1189, 1205–06 (11th Cir. 2007) (when the exhibits attached to a complaint "contradict" the allegations in the complaint, "the exhibits govern").   Plaintiff again confirmed that the transfer was their idea in an October 31, 2023, email,

15

writing:  "I noted that I would need to be reassigned to a different team."  Ex. 1; FAC ¶ 134 (referencing email).  A job transfer Accenture made as "the result of Plaintiff's own request" does not amount to retaliation for a harassment complaint.  *Jenkins v. MCG Health, Inc.*, 2008 WL 116335, at *11 (S.D. Ga. Jan. 7, 2008); *see also Mitchell v. Univ. of N. Ala.*, 785 F. App'x 730, 733, 737 (11th Cir. 2019) ("reassignment" that plaintiff "asked for" was not materially adverse action).  And because Plaintiff was the one who requested the transfer, they cannot show any "causal connection between the protected activity and the adverse employment decision," further undermining Plaintiff's retaliation claim.  *Greene*, 746 F. App'x at 931.

Regardless, even if Plaintiff had not requested or desired the transfer, it still would not be materially adverse.  Courts have held that a "transfer that does not involve a demotion in form or substance" is not "a materially adverse employment action."  *Buford v. Life Storage, LP*, 2019 WL 13031988, at *12 (N.D. Ga. Oct. 17, 2019).  That is the case here, as Plaintiff does not allege the transfer involved a reduction in "title, pay, benefits, [or] hours."  *Mitchell*, 785 F. App'x at 737.  Instead, Plaintiff asserts that the team to which they were transferred was "less prestigious."  FAC ¶¶ 117, 215.  But without any facts showing a "tangible harm" from the transfer, Plaintiff's conclusory allegation about their perceived "loss of prestige" is insufficient to plead a materially adverse employment action.  *Davis v. O'Rourke*, 2018 WL 8997476, at *9 (N.D.

16

Ga. July 18, 2018), *adopted by* 2018 WL 8997472 (N.D. Ga. Sept. 24, 2018).[4]

Plaintiff also alleges that Accenture purportedly "failed to provide" them "with adequate support" in their recovery, including because a single employee sent an email "publicly praising" Young while announcing his departure from Accenture.  FAC ¶¶ 110, 210, 213–14.  But Plaintiff's subjective belief that Accenture failed to provide maximal emotional "support" does not amount to a materially adverse action.  *See Clayton v. Dreamstyle Remodeling of Colo., LLC*, 2022 WL 910957, at *18 (D. Colo. Mar. 28, 2022) ("an employer's failure . . . to take particular corrective action that the plaintiff desires[] does not amount to a materially adverse employment action").  And, regardless, Plaintiff's own allegations make clear that Accenture afforded them numerous leaves of absence to address their mental health.  *See* FAC ¶¶ 81, 86, 102, 130.

Nor do Plaintiff's allegations that Accenture "impeded" Plaintiff's "attempts to seek transparency" add up to a materially adverse action.  FAC ¶¶ 209, 211–12.  Title VII does not entitle Plaintiff to share details of their sexual encounter with Young in the workplace.  *See, e.g.*, *Garcia v. Spun Steak Co.*, 998 F.2d 1480, 1487 (9th Cir. 1993) ("an employee must often sacrifice individual self-expression during working hours").  In any event, Accenture

---

[4] Plaintiff's reliance on *Muldrow v. City of St. Louis*, 144 S. Ct. 967 (2024), is misplaced.  *Muldrow* did not address Title VII retaliation claims, for which the "materially adverse" standard still applies.  *Id.* at 976.

allowed Plaintiff "to discuss whatever you feel is necessary."  Ex. 1.

## III.   Plaintiff's Tort Claims Fail As A Matter Of Law.

Plaintiff's tort claims likewise fail as a matter of law.  *First*, Plaintiff fails to allege facts sufficient to demonstrate that Accenture is vicariously liable for Young's alleged torts, which requires dismissal of Plaintiff's battery and IIED claims against Accenture.  *Second*, Plaintiff fails to state a tort claim based on Accenture's alleged conduct, which requires dismissal of Plaintiff's negligent infliction of emotional distress and negligent retention claims.

### A.   Accenture Is Not Vicariously Liable For Young's Alleged Torts (Counts V, VII).

Plaintiff's battery and IIED claims are premised on alleged conduct *by Young*, but Plaintiff fails to allege that Accenture can be held vicariously liable for that conduct.  Under Georgia law, "an employer may be held liable for its employee's tortious acts in three circumstances: (1) when the employer authorized the act prior to its commission; (2) when the employer ratified the act after its commission; or (3) when the act was committed within the scope of the employment."  *Benson v. Deere & Co.*, 2019 WL 12382920, at *9 (N.D. Ga. May 10, 2019).  None of those circumstances is present here.

***Battery (Count V).***  Plaintiff alleges that Young "forcibly hugged" them and "encroach[ed] upon their personal space and touch[ed] them."  FAC ¶¶ 220, 223.  But the complaint negates any inference that Accenture knew of, much

less authorized, these invasions at the time they allegedly occurred. To the contrary, Plaintiff acknowledges they "reported" Young's alleged harassment for the first time on December 2, 2022, *id.* ¶ 100, at which point Accenture promptly "investigated" and terminated Young's employment, *id.* ¶¶ 101–08. Accenture also afforded Plaintiff paid leave while it investigated their complaint, and Plaintiff does not allege that any offensive touching took place after they reported Young. *See id.* Thus, Accenture could not have "authorized the act prior to its commission." *Benson*, 2019 WL 12382920, at *9.

Nor did Accenture "ratify" any alleged battery. "For ratification to occur, the principal must accept and retain the benefits of the unauthorized act." *DaimlerChrysler Motors Co. v. Clemente*, 668 S.E.2d 737, 746 (Ga. Ct. App. 2008). It is doubtful that, under Georgia law, ratification liability can ever apply to sexual harassment by an employee. *See Travis Pruitt & Assocs., P.C. v. Hooper*, 625 S.E.2d 445, 449 (Ga. Ct. App. 2005). But even if it could, Accenture did the opposite of ratifying Young's behavior: it ended his employment. FAC ¶¶ 107–08; *see Cramer v. Bojangles' Rests., Inc.*, 2012 WL 716176, at *17 (N.D. Ga. Feb. 8, 2012) (rejecting ratification liability where "Defendant was not put on notice of that conduct until after the . . . incident and Defendant immediately took steps to address and correct it").

Finally, Young's alleged battery was not "within the scope" of his employment. *Benson*, 2019 WL 12382920, at *9. Georgia courts "consistently"

hold that "acts of sexual harassment committed by [an] employee" are "not committed within the scope of . . . employment." *Stewart v. Storch*, 617 S.E.2d 218, 222 (Ga. Ct. App. 2005); *see also Alpharetta First United Methodist Church v. Stewart*, 472 S.E.2d 532, 535–36 (Ga. Ct. App. 1996) ("it is well settled under Georgia law that an employer is not responsible for the sexual misconduct of an employee"); *Doe v. Fulton-DeKalb Hosp. Auth.*, 628 F.3d 1325, 1334–35 (11th Cir. 2010) (similar). This is because "these types of torts, being purely personal in nature, are unrelated to the employee's duties and . . . not in furtherance of the master's business." *Stewart*, 472 S.E.2d at 536.

This result holds even when the alleged tort "occurred during a time of ostensible employment." *Mountain v. S. Bell Tel. & Tel. Co.*, 421 S.E.2d 284, 285 (Ga. Ct. App. 1992). In *Mountain*, for example, a telephone company employee entered the plaintiff's home to install telephone services—a duty within the scope of his employment—and allegedly assaulted the plaintiff. *Id.* at 284–85. The court of appeals held the employer was not vicariously liable because the employee was not serving the employer "*at the time of the injury*." *Id.*; *see also Piedmont Hosp., Inc. v. Palladino*, 580 S.E.2d 215, 216 (Ga. 2003). Thus, it is irrelevant that Young "hugged" Plaintiff in a "work" setting, FAC ¶ 84—Accenture still cannot be held vicariously liable. *See Clark v. Alloy Wheel Repair Specialists, LLC*, 2019 WL 13292972, at *7 (N.D. Ga. Dec. 19, 2019) ("[m]ere allegations that the offender was [plaintiff's] boss and that much

20

of the harassment occurred at work or in work-related settings is not enough" to hold employer vicariously liable).

***Intentional Infliction (Count VII).***  Plaintiff's IIED claim turns on the January 1, 2022, incident in which Young allegedly performed a sexual act "during a live Facetime call."  FAC ¶¶ 57–70, 235.  Plaintiff again fails to allege that Accenture authorized the incident, which took place outside the office on a federal holiday, or somehow ratified it afterwards.  And, again, the alleged incident occurred outside the scope of Young's employment for the reasons explained above.  *See Mountain*, 421 S.E.2d at 285.  There is thus no basis for imposing vicarious liability on Accenture.

### B.   Plaintiff Fails To State A Tort Claim Based On Any Alleged Conduct By Accenture (Counts VIII, IX).

***Negligent Infliction of Emotional Distress (Count VIII).***  "Georgia law does not recognize a cause of action for . . . 'negligent infliction of emotional distress.'"  *Bowens v. Sodexo, Inc.*, 2019 WL 13268194, at *13 (N.D. Ga. Feb. 14, 2019).  Georgia also restricts the availability of emotional distress damages for an "ordinary negligence" claim, allowing recovery only when (1) "defendant's negligence causes a physical impact" on plaintiff, (2) that impact "causes physical injury" to plaintiff, and (3) the "physical injury" causes "emotional distress."  *Id.*  Plaintiff fails to satisfy any of the conditions required for emotional distress damages under a negligence theory.

*First*, Plaintiff fails to plausibly allege that Accenture was negligent. Plaintiff's claim is based on Accenture's alleged "efforts to protect" Young's reputation, Accenture's purported denial of Plaintiff's "requests for support in their recovery journey," and Accenture's nonexistent "obstruct[ion]" of Plaintiff's "attempts to speak candidly with their colleagues." FAC ¶¶ 247, 249–50. But Accenture does not owe Plaintiff any duty of care "in their recovery journey." *Id.* ¶ 249; *see McCrary v. Middle Ga. Mgmt. Servs., Inc.*, 726 S.E.2d 740, 746 (Ga. Ct. App. 2012) (employer has "no duty . . . to render aid" for an employee's "emotional well-being" when it is not "responsible for creating [the] situation"). Even if it owed Plaintiff a duty, Accenture's alleged conduct—maintaining Young's reputation and "obstruct[ing]" Plaintiff from discussing the alleged harassment, FAC ¶¶ 247, 250—does not breach that duty. Indeed, exercising discretion about the sensitive allegations at issue here could reasonably be deemed to be protective of the Plaintiff and, in any event, certainly not negligent. Plaintiff's claim should therefore be dismissed. *Hadley v. Bank of Am., N.A.*, 2018 WL 4656426, at *12 (N.D. Ga. Aug. 27, 2018).

*Second*, even if Plaintiff adequately alleged that Accenture was negligent, which they did not, Plaintiff fails to allege that negligence caused any "physical" impact or injury. *Bowens*, 2019 WL 13268194, at *14. The alleged events underlying Plaintiff's claim—Accenture's "efforts to protect" Young's "reputation," denial of "assistance" for Plaintiff "to heal," and

"obstruct[ion]" of Plaintiff's "attempts to speak candidly" with colleagues, FAC ¶¶ 247, 249–50—"involved no physical impact." *Bowens*, 2019 WL 13268194, at *14 (allegations that defendants failed to "properly accommodate" plaintiff's disability were insufficient to allege a "physical impact").

Similarly, Plaintiff's claimed injuries—emotional distress, humiliation, and anxiety, FAC ¶ 256—are not "physical." *Benson*, 2019 WL 12382920, at *10 ("severe and grievous physical and emotional distress, anxiety, nervousness, humiliation, and pain and suffering" do not qualify as a "physical injury"); *see also Sims v. Chase Home Fin., LLC*, 2011 WL 13176725, at *7 n.10 (N.D. Ga. Aug. 30, 2011) (similar).  Nor does Plaintiff's alleged anorexia satisfy the physical injury requirement.  *See Terrafranca v. Virgin Atl. Airways Ltd.*, 151 F.3d 108, 111–12 (3d Cir. 1998) (anorexia and other "physical manifestations" of "psychic or psychosomatic injuries" do not constitute "bodily injury").  And even if it did, Plaintiff's anorexia does not suffice because it did not arise from any *physical impact*.  *See Eley v. Fedee*, 869 S.E.2d 566, 570 (Ga. Ct. App. 2022) ("physical impact" and "physical injury" are discrete elements).

Even if Plaintiff could satisfy the elements of a negligent infliction claim, which they cannot, the claim still fails because it is barred by the Georgia Workers' Compensation Act.  *See* Ga. Code Ann. § 34-9-11.  That statute provides "the exclusive remedy for injuries arising out of and in the course of employment." *Slater v. McKinsey & Co.*, 530 F. Supp. 3d 1318, 1325 (N.D. Ga.

23

2021).  The injuries Plaintiff claims from Accenture's alleged efforts to "protect" Young's "reputation" and prevent Plaintiff from "shar[ing] their experiences authentically," FAC ¶¶ 247, 250, occurred "in the course of" their employment and arose from "the conditions under which the work [wa]s required to be performed," *Slater*, 530 F. Supp. 3d at 1326.  Plaintiff's "remedy, if any, [thus] lies exclusively under" the Workers' Compensation Act.  *Boulware v. Quiktrip Corp.*, 486 S.E.2d 662, 664 (Ga. Ct. App. 1997).

***Negligent Retention (Count IX).***  The negligent retention claim must be dismissed because Plaintiff does not allege any facts giving rise to the inference that Accenture negligently retained Young.  A claim for negligent retention arises when an employer negligently retains an employee and the employee "subsequently harms the plaintiff."  *Farrell v. Time Serv., Inc.*, 178 F. Supp. 2d 1295, 1300 (N.D. Ga. 2001).  Plaintiff "must allege facts showing that the employer knew or should have known of an employee's tendencies to engage in certain behavior relevant to" the plaintiff's alleged injuries.  *Rogers v. Bon Appetit Mgmt. Co.*, 2023 WL 4629544, at *3 (N.D. Ga. July 19, 2023).

Plaintiff has not alleged any facts suggesting that Accenture knew or had reason to know that Young "had a history of sexual harassment" before Plaintiff reported him.  *Brady v. Harris Ventures Inc.*, 2022 WL 22288351, at *4 (N.D. Ga. Feb. 3, 2022).  Plaintiff alleges that Young "implied" to unspecified "Accenture colleagues" that his departure from his prior job was "not

24

voluntary," and from there leaps to the conclusion that Young "may have sexually harassed" an unidentified "former subordinate."  FAC ¶ 260.  But Plaintiff pleads no facts that would allow the Court to credit this rank speculation, much less attribute knowledge of it to Accenture.  Even if Young "implied" that he was fired from a previous job, *id.*, he could have been terminated for any number of reasons unrelated to sexual misconduct.

To the extent Plaintiff's claim is based on Accenture's brief retention of Young during its investigation, these allegations likewise fail to state a claim. After Plaintiff "reported" Young's alleged harassment on December 2, 2022, Accenture promptly investigated and ended Young's employment on January 10, 2023.  FAC ¶¶ 100–05, 108.  Plaintiff does not allege that Young harassed them at any point during that interlude—to the contrary, Plaintiff was on a paid leave of absence during Accenture's investigation and did not return to work until after Young's departure.  *Id.* ¶¶ 102, 109.  Plaintiff thus cannot identify any actionable injury caused by Young's continued employment during Accenture's investigation.  *See Rogers*, 2022 WL 17566106, at \*2 (dismissing negligent retention claim where "Plaintiff does not allege how the behavior continued or repeated itself after Defendant was put on notice").

## CONCLUSION

The Court should dismiss the claims as to Accenture.

25

Dated:  June 10, 2024                              Respectfully submitted,

                                         */s/ Jason C. Schwartz*
                                         Jason C. Schwartz (*pro hac vice*)
                                         Katherine Moran Meeks (*pro hac vice*)
                                         Zoë Klein (*pro hac vice forthcoming*)
                                         GIBSON, DUNN & CRUTCHER LLP
                                         1050 Connecticut Avenue, N.W.
                                         Washington, D.C. 20036-5306
                                         (202) 955-9500
                                         jschwartz@gibsondunn.com

                                         */s/ Holly McDaniel*
                                         Holly McDaniel (Ga. Bar No. 733703)
                                         LITTLER MENDELSON, PC
                                         3424 Peachtree Road, NE
                                         Atlanta, GA 30326
                                         (404) 233-0330
                                         hmcdaniel@littler.com

                                         Jennifer Schilling (*pro hac vice*)
                                         LITTLER MENDELSON, PC
                                         321 N. Clark Street, Suite 1000
                                         Chicago, Illinois 60654
                                         (312) 846-7027

                                         *Attorneys for Defendant Accenture LLP*

## CERTIFICATE OF COMPLIANCE

Pursuant to Local Rule 7.1(D), I hereby certify on June 10, 2024, that the foregoing complies with the font and point selection approved by this Court in Local Rule 5.1(B).  This paper was prepared on a computer using Century Schoolbook 13-point font, double spaced.


 /s/ *Jason C. Schwartz*
Jason C. Schwartz

27

## CERTIFICATE OF SERVICE

I hereby certify that on June 10, 2024, I caused the foregoing Memorandum of Law to be electronically filed with the Clerk of Court using the CM/ECF system, which will automatically send email notification of such filing to all counsel of record.

 /s/ *Jason C. Schwartz*
Jason C. Schwartz

28