IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| HALEY COLE, | ) | |
| | ) | |
| Plaintiff, | ) | JURY TRIAL DEMANDED |
| | ) | |
| v. | ) | |
| | ) | CIVIL ACTION FILE |
| ACCENTURE, LLP and | ) | 1:24-CV-01897-MHC-JKL |
| LAWRENCE CHRISTOPHER | ) | |
| YOUNG, ELLYN SHOOK, and | ) | |
| RYAN OAKES in their individual | ) | |
| and professional capacities, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

## PLAINTIFF'S OPPOSITION TO DEFENDANTS ELLYN SHOOK AND RYAN OAKES'S MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT AND MEMORANDUM OF LAW IN SUPPORT

Plaintiff Haley Cole hereby submits this opposition to Defendants Ellyn Shook's and Ryan Oakes's Motion to Dismiss the First Amended Complaint for failure to state a claim under Fed. R. Civ. P. 12(b)(6) ("Motion").

## INTRODUCTION

This case emerges from grave allegations of sexual harassment, discrimination, retaliation, and the breach of trust by a global employer that publicly champions the causes of diversity, equality, and mental health. Rather than defending against Plaintiff's claims on the merits, Defendants Ellyn Shook ("Shook") and Ryan

1

Oakes ("Oakes") hope to prevail on a motion to dismiss that completely ignores the detailed allegations outlined by Plaintiff Cole in the First Amended Complaint ("Complaint").[1]

Defendants Shook and Oakes put forth a motion to dismiss that egregiously misinterprets the substance of Plaintiff Cole's legitimate grievances. Their Motion disregards the clear allegations set forth in the Complaint and selectively interprets the law, ignoring that a motion to dismiss is not the proper venue for resolving factual disputes.

The Complaint more than satisfies the pleading requirements for actionable claims and has unassailable grounds for this Court's jurisdiction to be exercised. Defendants Shook and Oakes attempt to dismiss is a premature effort to sidestep a case that is both factually, legally, and jurisdictionally substantiated. Accordingly, their Motion should be denied allowing Plaintiff Cole the opportunity to seek the justice due.

## LEGAL ARGUMENTS AND CITATION OF AUTHORITY

## I.    LEGAL STANDARD FOR MOTION TO DISMISS

---

[1] Plaintiff Cole's response and opposition to Defendants Shook's and Oakes' Motion to Dismiss is supported by the First Amended Complaint and the exhibits submitted on May 1, 2024, along with the detailed reasoning provided in the attached legal brief. Plaintiff's oppositions to the separate motions to dismiss filed by (1) Defendants Accenture LLP and (2) Defendant Young, which are being filed at the same time, contain further supportive legal arguments, which are expressly incorporated herein by reference as additional support to oppose Defendants Shook's and Oakes' motion to dismiss.

At the motion to dismiss stage of litigation, the court must accept all well-pleaded facts as true and construe the complaint in the light most favorable to the plaintiff. *See Duke v. Cleland,* 5 F.3d 1399, 1402 (11th Cir. 1993); *see also Hill v. White*, 321 F.3d 1334, 1335 (11th Cir. 2003). Generally, notice pleading is all that is required. *See Doe v. Emory University*, Civil Action No. 1:21-CV-4859, NDGA 2022 (Thrash, J.), citing *Lombard's, Inc. v. Prince Mfg., Inc*., 753 F.2d 974, 975 (11th Cir. 1985).

To withstand a motion to dismiss under Rule 12(b)(6), a complaint requires sufficient factual substance that, accepted as true, outlines "a claim to relief that is plausible on its face." *Innova Hosp. San Antonio, Ltd. P'ship v. Blue Cross & Blue Shield of Ga., Inc., 892 F.3d 719, 726 (5th Cir. 2018).* Under the Supreme Court precedents of *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009) a claim is facially plausible when it contains enough facts to suggest that the defendant is liable for the alleged conduct. *Iqbal*, 556 U.S. at 678. Given the courts' general reluctance to dismiss potentially meritorious claims early in the process, dismissal is inappropriate unless it's clear that the plaintiff can prove no set of facts in support of their claim. Kaufman, 331 F. App'x at 277.

Comprehensively applying this legal precedent, Plaintiff Cole's Complaint contains sufficiently detailed facts to meet the plausibility standard required for

federal court cases, rooted in the landmark decisions *Twombly* and *Iqbal*. Accordingly, Defendants Shook and Oakes Motion should be denied.

## II.  THIS COURT HAS PERSONAL JURISDICTION OVER DEFENDANTS UNDER GEORGIA'S LONG-ARM STATUTE

In the Motion, Defendants Shook and Oakes claim that they should be dismissed for lack of personal jurisdiction because they're not Georgia residents and lack presence in Georgia.  However, there are multiple grounds upon which personal jurisdiction can be established under Georgia's long-arm statute, and many of those grounds exist in the instant matter.

Georgia's long-arm statute, O.C.G.A. § 9-10-91, permits the state's courts to exercise personal jurisdiction over nonresident individuals or their representatives for specific activities closely connected to the state. Jurisdiction is appropriate when a nonresident transacts business within Georgia, commits a tortious act within the state, or causes a tortious injury in Georgia from an act done elsewhere, provided substantial business or revenue is derived from the state. *Diamond Crystal*, 593 F.3d at 1260. The statute is interpreted expansively, aiming to reach the maximum extension permitted by due process. *Coe & Payne Co, v. Wood-Mosaic* Corp., 230 Ga. 58, 60 (1974).

Due process requires that Defendants have fair notice that certain activities may subject them to the jurisdiction of Georgia. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985). If no evidentiary hearing is held on a motion to dismiss

4

for lack of personal jurisdiction, the plaintiff must establish a prima facie case of jurisdiction. Madara v. *Hall*, 916 F.2d 1510, 1514 (1990), taking as true the allegations in the complaint in the absence of contest by the defendant. *Morris v. SSE, Inc.,* 843 F.2d 489, 492, 1988. The burden of proof shifts back to the plaintiff if the defendant's affidavits are conclusory. *Meier ex rel. Meier v. Sun Int'l Hotels, Ltd*., 288 F.3d 1264, 1269 (2002). Any conflicts between Plaintiff Coles verified allegations and the affidavits submitted by Defendants Oakes and Shook require the court to infer all reasonable assumptions in favor of the plaintiff. *Madara*, 916 F.2d at 1514.

Contrary to the Motion, Plaintiff alleges that Defendants' actions were directed at Georgia and a Georgia resident and that all damages resulting from Defendants' tortious conduct occurred in Georgia. Further, both Defendants Shook and Oakes have purposefully availed themselves of the privileges of conducting activities within this jurisdiction through consistent communications and transactions implicating Georgia. The nexus between Defendants' contacts with Georgia and the injury experienced by Plaintiff Cole is unmistakable. The tortious misconduct penetrating Georgia's borders, inflicted upon Plaintiff Cole in Georgia are incidents rooted in Defendants' calculated conduct aimed at this state.

Consequently, Defendants Oakes' and Shook's conduct and its repercussions directly connect to Georgia, meriting this Court's jurisdiction, consistent with the

principles elucidated in *Exceptional Marketing Group, Inc. v. Jones*, 749 F. Supp. 2d 1352, 1362 (N.D. Ga. 2010).

Plaintiff's allegations in Count VII, Count VIII, and Count IX of the First Amended Complaint, detailing Defendants' deliberate tortious actions, squarely anchor them within the grasp of Georgia's long-arm statute. This statute unequivocally subjects Defendants to this Court's jurisdiction when non-defamatory torts are at issue—as decisively demonstrated in *Mays v. Laurent Publishing, Ltd*., 600 F. Supp. 29 (1984), wherein a similar nexus of intentional tortious conduct established jurisdiction.

Highlighting the "effects test" delineated in *Calder v. Jones*, 465 U.S. 783, 104 S. Ct. 1482 (1984), personal jurisdiction adheres when out-of-state defendants allegedly cause harm within the forum. Both Defendants Shook's and Oakes' tortious acts are quintessential examples of such jurisdictionally significant conduct. The precedent established in *Licciardello v. Lovelady*, 544 F.3d 1280 (11th Cir. 2008) further solidifies the presumption of jurisdiction, where a solitary tortious act directed at the forum suffices to meet the test.

Defendants Shook's and Oakes' conduct extends far beyond the ethers of the internet; their actions constitute a deliberate onslaught of transgressions against Plaintiff within Georgia's bounds. These actions, paired with the substantial and foreseeable consequences felt deeply by Plaintiff Cole, clearly satisfy the requisite

"foreseeable effects" standard for affirming this Court's jurisdiction—particularly at this early stage of litigation.

Repeatedly, Georgia courts have wielded *Calder*'s principles to hold non-residents accountable for their intentional acts against Georgia residents. This Court, embracing the effects test in *Horsley v. Feldt*, 128 F. Supp. 2d 1374 (N.D. Ga. 2000) must recognize that such principles inexorably lead to the conclusion that the Defendants' targeted conduct against a Georgia resident falls well within the boundaries of its jurisdictional landscape.

In effect, Defendants' awareness of Plaintiff's Georgia residence and Defendants' tortious conduct within this forum state notifies them unequivocally of their potential invocation before this jurisdiction. Thus, both Defendants Shook and Oakes could, and rationally should, have anticipated defending their tortious actions in Georgia, a procedural cornerstone affirmed by the "effects test" jurisprudence.

### III. THIS COURT'S EXERCISING PERSONAL JURISDICTION OVER THE DEFENDANTS DOES NOT OFFEND TRADITIONAL NOTIONS OF FAIR PLAY AND SUBSTANTIAL JUSTICE.

Defendants' contention that personal jurisdiction is unjustified and without merit. The burden on Defendants to litigate in a state other than their residence is minimal due to advances in communication and transportation, significantly reducing the inconvenience of defending actions out-of-state. *See American General Life Ins. Co. v. Margolis Family I, LLC*, 2008 WL 857436, at *12 (N.D. Ga. Mar.

31, 2008). Additionally, Georgia maintains a strong interest in adjudicating cases involving harm to its residents by out-of-state actors, thus providing a significant justification for exercising jurisdiction. *Paul, Hastings v. City of Tulsa,* 245 F. Supp. 2d 1248, 1259 (N.D. Ga. 2002).

As a Georgia resident, Plaintiff Cole is entitled to seek reparations within their home jurisdiction for injuries purportedly caused by Defendants, making Georgia an appropriate and convenient forum. Moreover, this lawsuit's efficiency is not compromised by jurisdiction in Georgia. Defendants Shook and Oakes have not specified any material witnesses outside of Georgia that would impose upon the Court's subpoena power. Without such identification, their argument against jurisdiction does not hold. *Southern Appalachian Biodiversity Project v. U.S. Forest Service*, 162 F. Supp. 2d 1365, 1376 (N.D. Ga. 2001).

Defendants Motion certainly has not made a "compelling case" that jurisdiction in Georgia would be unreasonable. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 477 (1985). Disrupting Plaintiff's forum choice would merely shift the purported inconvenience from Defendants Shook and Oakes to the Plaintiff—an action against the interests of justice.

## IV.    TIMELINESS OF PLAINTIFF'S TITLE VII CLAIMS

### A. *Misinterpretation of the Continuing Violation Doctrine*

Under Title VII, a charge must be filed with the EEOC within 180 days of the alleged unlawful employment practice. 42 U.S.C.A. § 2000e-5(e)(1); *Wilkerson v. Grinnell Corp.*, 270 F.3d 1314, 1317 (11th Cir. 2001). However, *National Railroad Passenger Corp. v. Morgan*, 536 U.S. 101 (2002), establishes that a hostile work environment claim is not barred by the 180-day filing requirement if any act contributing to the claim occurred within the statutory period.

Defendants Motion hinges upon the premise that all alleged discriminatory conduct occurred before July 2, 2023, thereby rendering the claims untimely. This interpretation is overly restrictive and fails to account for the continuing violation doctrine and the nature of hostile work environment claims. The continuing violation doctrine is particularly relevant in hostile work environment claims, which are characterized by a series of acts that collectively constitute one unlawful employment practice.

In *Morgan*, the Supreme Court held that "consideration of the entire scope of a hostile work environment claim, including behavior alleged outside the statutory time period, is permissible for the purposes of assessing liability, so long as any act contributing to that hostile environment takes place within the statutory time period." *Morgan,* 536 U.S. 101, 105 (2002). Hostile work environments are different from discrete acts of discrimination or retaliation because the entire hostile environment, which occurs over a period of time, encompasses a single unlawful

employment practice. *Id*. at 117-18. Thus, because the incidents comprising a hostile work environment are part of one unlawful employment practice, the employer may be liable for all acts that are a part of this claim, even those occurring outside the limitations period. *Id*. Thus, "the entire time period of the hostile environment may be considered by a court for the purposes of determining liability." *Id*. at 105.

Here, after reporting Defendant Young's sexual harassment and grooming to Accenture, Defendant Oakes retaliated against Plaintiff by transferring them to a less prestigious position upon their return to work in January 2023. *Id*. at ¶ 215. This aligns with the precedent set in *Muldrow v. City of St. Louis, Missouri*, in which the Supreme Court held that a claim under Title VII for gender discrimination and retaliatory transfer only requires showing some adverse effect on employment conditions.

Defendant Shook was directly involved in the investigation of Young's sexual harassment of Plaintiff, which significantly influenced Plaintiff's decision to tender their resignation. *Id*. at ¶ 216. After two years of trying to recover Plaintiff resigned on December 21, 2023, because they had reached a breaking point. *Id*. at ¶ 200. Plaintiff Cole's resignation was the direct and proximate consequence of Defendant Young's severe and pervasive sexual harassment, which made the working environment "so intolerable that a reasonable person would have felt compelled to resign." *Id*. at ¶ 201. Plaintiff Cole resigned as a result of Defendant Young's sexual

harassment and Defendants Shook's and Oakes persistent and continuous retaliation, which constituted a construct discharge. A constructive discharge is treated as an adverse employment action for Title VII purposes. See Faragher v. City of Boca Raton, 524 U.S. 775, 807, 118 S.Ct. 2275, 141 L.Ed.2d 662 (1998). *Id.* at ¶ 204.

Here, Plaintiff Cole timely filed a Charge of Discrimination with the Equal Employment Opportunity Commission on December 29, 2023. *Id.* at ¶ 16. Accordingly, Plaintiff's EEOC Charge was timely because an act or acts contributing to the claim occurred within the filing period.

The facts as alleged in the Complaint, which must be taken as true for purposes of Defendant's motion, constitute their Title VII claims are part of the same unlawful employment practice and at least one act falls within the time period. *Morgan,* 536 U.S. at 117.

Accordingly, the Court should deny Defendants' Motion to Dismiss all Title VII claims and hold that "the entire time period" during which Defendants engaged in discrimination, harassment, retaliation, and constructive discharge "may be considered by [the] court for the purposes of determining liability." *Morgan,* 536 U.S. at 117.

### B. *The Continuing Violation Doctrine Precludes Dismissal of Count VII*

Defendants' arguments with respect to Plaintiff's intentional infliction of emotional distress claims are equally unpersuasive. Defendants argue that Plaintiff's

claim for intentional infliction of emotional distress is barred by the statute of limitations pursuant to O.C.G.A. § 9-3-33, which mandates a two-year limitation period for personal injury claims.

However, Plaintiff's claims implicate the "continuing violation doctrine." *See Silva v. Baptist Health S. Fla., Inc.*, 856 F.3d 824, 842 (11th Cir. 2017). Under the doctrine, the "statute of limitations is tolled ... where the violation giving rise to the claim continues to occur within the limitations period." *See Nat'l Parks & Conservation Ass'n, Inc. v. Tennessee Valley Auth.*, 502 F.3d 1316, 1322 (11th Cir. 2007). While O.C.G.A. § 9-3-33 is the correct limitations statute to be applied to Plaintiff's intentional emotional distress claim, Defendants apply an overly narrow view of the test for determining when the statute of limitations begins to run in this case. The unique character and nature of Plaintiffs' claims do not lend themselves to the statute of limitations analysis suggested by Defendant.

For example, In *Mears v. Gulfstream Aerospace Corp.*, 484 S.E.2d 659 (1997), the Georgia Court of Appeals stated:

> Georgia recognizes the theory of continuing tort, which applies "where any negligent or tortious act is of a continuing nature and produces injury in varying degrees over a period of time. Under this theory, the statute of limitation does not begin to run "until such time as the continued tortious act producing injury is eliminated … We previously have indicated that a series of acts allegedly causing emotional distress should be viewed cumulatively, rather than in isolation … In cases involving a series of acts allegedly producing emotional distress, one incident might not, taken in isolation, rise to a level of conduct actionable under the law for emotional distress. Viewed cumulatively,

however, that incident in combination with a claimed pattern of conduct may support the cause of action.

In the instant case, the Complaint alleges tortious, discriminatory, and retaliatory conduct by Defendants Shook and Oakes that were continuing in nature. Specifically, the Complaint devotes several paragraphs detailing the specific conduct perpetrated by both Defendants Oakes and Shook including but not limited to, Plaintiffs retaliatory transfer, by Oakes, to a less prestigious dead end internal marketing position upon their return to work in January 2023 and Oakes' and Shooks' intentional refusal, or at a minimum negligence, to offer Plaintiff the requested mental health support and professional development during their transition back to work. First Am. Compl. at ¶¶ 115 - 122.

Defendant Young subjected Plaintiff Cole t a continuous pattern and extensive pattern of grooming, unwanted sexual advances, unwanted sexual communication involving his own secretive homosexual behaviors and desires, and unwelcomed physical touching that began in early 2020 and continued until his final day of employment. First Am. Compl. at ¶¶ 46-97, 160-204, 218- 256.

Tragically, Defendants Accenture, Shook, and Oakes picked up where Defendant Young left off by continuing to inflict harm upon Plaintiff Cole, which resulted in their eventual constructive discharge on December 29, 2023. Accordingly, the continuing violation doctrine precludes dismissal. Plaintiff pleaded

13

repeated acts by Defendants that constitute intentional infliction of emotional distress, and negligent infliction of emotional distress against Defendant Young.

### C. *Defendants' Statute Of Limitations Defense Should Not Be Decided On A Motion To Dismiss*

Even if the Court were to apply a statute of limitations, Defendants' statute of limitations defense is not appropriate a motion to dismiss and should be denied as premature. Plaintiff is not required to anticipate or overcome affirmative defenses such as the statute of limitations defense when drafting pleadings.

A plaintiff is "under no obligation to anticipate and negate this affirmative defense in the complaint." *See Sec'y of Labor v. Labbe*, 319 F. App'x 761, 764 (11th Cir. 2008) at 6. A Rule 12(b)(6) motion asking to dismiss a complaint based on statute of limitations grounds should not be granted unless "it is apparent from the face of the complaint that the claim is time-barred.... and '*only* if it appears beyond a doubt that [a plaintiff] can prove no set of facts that toll the statute.'" *Id.* (quoting *Tello v. Dean Witter Reynolds, Inc.,* 410 F.3d 1275, 1292 (11th Cir. 2005)).

Like the plaintiff in *Labbe,* Plaintiff asserts allegations that "clearly are not time-barred" and the Court cannot conclude "beyond a doubt" that Plaintiff would not be able to prove any set of facts that toll the statute. *Id.*

The Complaint alleges that Defendant Oakes' discriminatory and retaliatory misconduct and Defendant Shooks' negligence directly contributed to Plaintiff

Cole's severe, extreme, and debilitating mental anguish, including a recurrence of major depression, anxiety, ADHD, anorexia nervosa, suicidal ideations, sleeplessness, inability to concentrate, and irritability. *Id.* at ¶¶ 77, 85, 86, 88, 90, 237, 239, 240, 262.

Importantly, the Northern District of Georgia recognizes that the affirmative defense of statute of limitations should be brought at the summary judgment stage. *See Ashcroft v. Randel,* 391 F. Supp. 2d at 1219. The court stated that:

> At the summary judgment stage, the moving party must show that there is no genuine issue of material fact as to whether the statute of limitations has run...That is to say, the moving party must establish that 'the record taken as a whole could not lead a rational trier of fact to find for the non-moving party … As such, the party asserting a statute of limitations defense bears the burden of showing the defense is applicable.

*Id.* at 1219.

At this stage of litigation, Plaintiff is not required to overcome a statute of limitations defense because Plaintiff has only filed their First Amended Complaint. Plaintiff has not presented all factual allegations in their entirety, nor have the Parties initiated discovery. Taken in the light most favorable to Plaintiff Cole, the Complaint provided ample notice of Plaintiff's claims against Shook and Oakes, and Defendants' questions as to the nature of these claims can be answered in the course of discovery. As the statute of limitations defense is best addressed at

the summary judgment stage, not the motion to dismiss stage, Defendants Shook's and Oakes' Motion as to statute of limitations should be denied.

## V.    PLAINTIFF SUFFICIENTLY PLEADED TITLE VII CLAIMS

### A. *INDIVIUDAL LIABILITY*

Defendants contend that Plaintiff's Title VII claims against Defendants Shook and Oakes in their individual capacity should be dismissed because Title VII relief is exclusively directed at employers, not individual employees. However, Defendant's argument misinterprets the application of Title VII and overlooks critical distinctions recognized in relevant case law.

In *Busby v. City of Orlando*, 931 F.2d 764, 776 (11th Cir. 1991), the Court ruled that "[a]Title VII Plaintiff may recover under Title VII by suing the employer, either by naming the supervisory employees as agents of the employer or by naming the employer directly." *Id.* at 772. The Plaintiff in *Busby* sued and named each defendant in the action individually and in their official capacity, and, notably, not all *Busby* defendants were supervisory employees with the authority to bind the employer with liability. In *Edwards v. Wallace Community College*, 49 F.3d. 1517, 1520 n.3 (11th Cir. 1995), citing *Busby*, the Court made a distinction between suing individuals who had supervisory authority compared to individuals who lacked supervisory authority.

Although Plaintiff named Defendants Shook and Oakes individually, Plaintiff's claim against the individual Defendants should be construed as a claim against Accenture LLP and the individual Defendants in their supervisory capacity. *Id.* at 764, (holding that claims made against individual City employees ought to be construed as made against the City).

Here, Plaintiff named C-Suite supervisory employees, Defendants Shook and Oakes, both of whom had authority to bind the employer with liability. Plaintiff has alleged that Defendant Shook is Chief Leadership & Human Resources Officer and a member of Accenture's Global Management Committee and Investment Committee. First Am. Compl. at ¶ 10. Defendant Oakes is the Chair of Accenture's Global Public Health and Public Services Industry practice group and a member of Accenture's Global Management Committee. *Id*. at ¶ 11.

Additionally, Defendant Shook, as CHRO and a member of Accenture's executive team, was personally involved in the Defendant Young's investigation, was aware of the complaints against Young, and was a final decisionmakers of the investigation. *Id.* at ¶ 105. Defendant Oakes was aware of Young's sexual harassment and responsible for Plaintiff's readjustment at Accenture. *Id.* at ¶ 109. Oakes replaced Young as Plaintiff Cole's career counselor and tasked with guiding Plaintiff's professional development at Accenture. *Id.* at ¶ 118. Oakes was at least one of the decision makers involved in transferring Plaintiff to a less desirable team

as punishment for complaining about Young. *Id*. at ¶ 120. Defendants Shook and Oakes were the only people in the public service industry senior leadership personally aware that Plaintiff was sexually harassed by Mr. Young. *Id*. at ¶ 121.

Further, Plaintiff reported to Defendants Shook and Oakes that Defendant Young had committed acts of sexual harassment, battery, and invasion of privacy against them for an extended period of time during the tenure of Plaintiff Cole's employment with Accenture. *Id*. at ¶ 262. After the report, Shook and Oakes put Plaintiff Cole on leave and allowed Defendant Young to continue in his supervisory position. *Id*. at ¶ 263. Subsequently, Shook and Oakes investigated the claims made by Plaintiff Cole against Defendant Young. *Id*. at ¶ 265. Thus, Shook and Oakes had actual knowledge of Mr. Young's sexual grooming, harassment, and battery committed against Plaintiff, and yet still chose to keep Defendant Young in his supervisory and leadership position. *Id*. at ¶ 280.

Defendants Shook's and Oakes' legal and factual interpretation in the Motion is a gross oversimplification that ignores the potential for individual liability under Title VII in specific circumstances. Taken in the light most favorable to Plaintiff Cole, the Complaint has adequately pleaded a basis for holding Defendants personally liable under Title VII. Defendants' limited argument fails to acknowledge the nuanced application of Title VII principles and overlooks Plaintiff's valid legal basis for asserting claims against Defendant Young in his individual capacity.

B.  THE *PURPOSES OF TITLE VII ARE SERVED BY PERMITTING PLAINTIFF TO ASSERT CLAIMS AGAINST DEFENDANTS SHOOK AND OAKES*

Plaintiff vehemently opposes Defendants' Motion to dismiss the Title VII claims against Defendants for purported failure to exhaust administrative remedies. Defendants' argument rests on a narrow interpretation of the substantial precedent that allows claims to proceed against unnamed parties when certain equitable factors are met.

Prior to filing a Title VII claim, a plaintiff must first exhaust administrative remedies by timely filing a discrimination charge with the EEOC. *See Virgo v. Riviera Beach Associates, Ltd.,* 30 F.3d 1350, 1358 (11th Cir. 1994). While it may be true that ordinarily parties not named in an initial EEOC charge cannot be sued in a subsequent action, "courts liberally construe this requirement," and where the purposes of the naming requirement, to notify the charged party of allegations and afford the party the opportunity to take part in conciliation and comply, "are fulfilled," a party unnamed in the EEOC charge may be subjected to the jurisdiction of federal courts. *Id.* at 1358-59.

In the instant case, the Court must examine the following factors in determining whether here purposes of Title VI are fulfilled regarding the naming requirement: the similarity of interest between the named party and the unnamed party; whether the plaintiff could have ascertained the identity of the unnamed party

at the time the EEOC charge was filed; whether the unnamed parties received adequate notice of the charges; whether the unnamed parties had an adequate opportunity to participate in the reconciliation process; and whether the unnamed party actually was prejudiced by its exclusion from the EEOC proceedings. *Id.* at 1359. This test is not intended to be rigid and other factors may be included in the Court's analysis. *Id.*

With respect to the first factor, Plaintiff has alleged that Defendant Shook is Chief Leadership & Human Resources Officer and a member of Accenture's Global Management Committee and Investment Committee. First Am. Compl. at ¶ 10. Defendant Oakes is the Chair of Accenture's Global Public Health and Public Services Industry practice group and a member of Accenture's Global Management Committee. *Id.* at ¶ 11.

Additionally, Defendant Shook, as CHRO and a member of Accenture's executive team, was personally involved in the Young investigation, was aware of the complaints against Young, and was a final decisionmakers of the investigation. *Id.* at ¶ 105. Defendant Oakes was aware of Young's sexual harassment and responsible for Plaintiff's readjustment at Accenture. *Id.* at ¶ 109. Oakes replaced Young as Plaintiff Cole's career counselor and tasked with guiding Plaintiff's professional development at Accenture. *Id.* at ¶ 118. Oakes was at least one of the decision makers involved in transferring Plaintiff to a less desirable team as

punishment for complaining about Young. *Id*. at ¶ 120. Defendants Shook and Oakes were the only people in the public service industry senior leadership personally aware that Plaintiff was sexually harassed by Mr. Young. *Id*. at ¶ 121.

Further, Plaintiff reported to Defendants Shook and Oakes that Defendant Young had committed acts of sexual harassment, battery, and invasion of privacy against them for an extended period of time during the tenure of Plaintiff Cole's employment with Accenture. *Id*. at ¶ 262. After the report, Shook and Oakes put Plaintiff Cole on leave and left Defendant Young in his position. *Id*. at ¶ 263. Subsequently, Shook and Oakes investigated the claims made by Plaintiff Cole against Defendant Young. *Id*. at ¶ 265. Thus, Shook and Oakes had actual knowledge of Mr. Young's sexual grooming, harassment, and battery committed against Plaintiff, and yet still chose to keep Young in his supervisory and leadership position. *Id*. at ¶ 280.

Defendants Shook and Oakes maintained a high level of control over Plaintiff Cole and other employees, including the responsibility to direct and control the Plaintiff and other employees, hire, terminate, discipline, reassign, investigate employee complaints, and manage employee relations. As such, Defendants Shook and Oakes have similar interests with respect to Plaintiff as the other Defendants.

With respect to the second factor, the primary objective of the EEOC charge is to notify the employer of discriminatory conduct. Naming the Accenture

sufficiently covers the actions of Shook and Oakes, particularly considering their supervisory and leadership roles. In *Wright v. AmSouth Bancorporation*, 320 F.3d 1198, 1202 (11th Cir. 2003), the Eleventh Circuit reiterated that the purpose of the charge-filing requirement is to put the employer on notice and provide an opportunity to comply with the law voluntarily before litigation commences.

By naming Accenture, Plaintiff effectively notified the employer of the discriminatory conduct, encompassing the actions of its employees, particularly those in supervisory roles. The focus is whether the EEOC charge provided enough information to investigate the claims, not necessarily on listing every individual involved. Accenture, as the employer, was aware of the allegations and capable of addressing them, including the misconduct of Defendants Shook and Oakes.

With respect to the third factor, Shook and Oakes, as part of the C-Suite senior management team, had constructive notice of the EEOC charge against Accenture. Their personal and direct involvement in the events leading to the charge, including the investigation of Young, means they were both explicitly aware of the ongoing investigation and potential claims. The EEOC charge served its purpose by notifying Accenture of the alleged discrimination. It is reasonable to infer that Shook and Oakes, given their senior roles, were informed about the charge and the allegations against the company.

With respect to the fourth and fifth factors, participation and prejudice due to an inability to participate in the EEOC proceedings, the EEOC proceedings involved nothing of substance, and Defendants have not alleged prejudice. There was no conciliation process. An unnamed party is not deprived of participation in a conciliation process when the named party was *also* not afforded that opportunity. *See Peppers v. Cobb Cnty., Georgia*, 835 F.3d 1289, 1297 (11th Cir. 2016) ("Finally, the County was not stopped from participating in the EEOC's reconciliation process as a result of its failure to be named because--based on the EEOC's quick turnaround of the charge--even the District Attorney's Office (which had been named) was not afforded the opportunity to participate.")

Accordingly, Plaintiff has adequately pleaded sufficient facts to satisfy the *Virgo* factors and to survive a motion to dismiss.

## VI.   PLAINTIFF SUFFICIENTLY PLED THEIR TORT CLAIMS

### A. PLAINTIFF SUFFICIENTLY PLEADED VICARIOUS LIABILITY

Plaintiff Cole pleaded sufficient facts to establish a plausible claim that Defendants had a principal-agent relationship with Young. Specifically, the Complaint alleges that Shook and Oakes held supervisory authority over Young and were responsible for overseeing his work. This supervisory relationship establishes an agency relationship sufficient to hold Shook and Oakes vicariously liable for Young's tortious acts. As established in *Smith v. Merck & Co., 472 F. Supp. 2d 1096,*

*1110 (M.D. Ga. 2007)*, an agency relationship can be established when the principal has control over the agent's conduct or has delegated authority to the agent.

The Complaint includes detailed factual allegations that, when taken as true, establish a plausible claim for relief. Plaintiff alleges that Shook and Oakes were aware of Young's conduct, had the authority to prevent it, and failed to take effective action, thereby implicitly authorizing and ratifying his conduct. These allegations are sufficient to withstand a motion to dismiss under the standards set forth in *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

### B. PLAINTIFF SUFFICIENTLY PLEADED NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS

Defendants correctly cite that, under Georgia law, negligent infliction of emotional distress claims generally require a physical impact, physical injury, and resultant emotional distress. *Bowens v. Sodexo, Inc.*, 2019 WL 13268194, at *13. However, exceptions exist where the conduct in question is particularly egregious or where the defendant owes a specific duty of care to the plaintiff.

Defendants assert that Shook and Oakes owe no duty of care to the Plaintiff, citing *Rasnick v. Krishna Hosp., Inc.*, 690 S.E.2d 670, 673 (Ga. Ct. App. 2010), and *McCrary v. Middle Ga. Mgmt. Servs., Inc.*, 726 S.E.2d 740, 746 (Ga. Ct. App. 2012). However, these cases are distinguishable. The duty of care here arises from the specific circumstances and the roles Shook and Oakes played in Plaintiff Cole's professional environment. As noted *supra*, the Complaint alleges that Shook and

Oakes engaged in conduct that went beyond mere professional discretion, actively contributing to the harm suffered by Plaintiff Cole.

The Complaint alleges that the actions of Shook and Oakes resulted in physical symptoms, including anorexia, which is recognized as a physical manifestation of emotional distress. Defendants' reliance on *Terrafranca v. Virgin Atl. Airways Ltd.*, 151 F.3d 108, 111–12 (3d Cir. 1998), is misplaced, as the case at hand involves direct allegations of physical harm resulting from Defendants' actions.

Plaintiff Cole alleged a causal link between the Defendants' conduct and the physical manifestations of distress. Unlike the cases cited by the Defendants, where the connection between conduct and injury was tenuous, Plaintiff Cole alleged specific details showing how Defendants' actions directly led to physical and emotional suffering.

### C. PLAINTIFF SUFFICIENTLY PLEADED NEGLIGENT RETENTION

"Georgia law recognizes a cause of action for negligence against an employer where the employer, in the exercise of reasonable care, knew or should have known about an employee's reputation for sexual harassment, and where it was foreseeable that the employee would engage in harassment of a fellow employee, but he was nonetheless continued in his employment." *B.C.B. Co. v. Troutman* 200 Ga. App. 671, 673, 409 S.E.2d 218 (1991).

In this instant action, even after Plaintiff reported Young's sexual harassment, he was not immediately removing him from his leadership or supervisory positions within the organization, including leading project work and teams, performing all his duties as the practice group leader for the Georgia Public Service group. *See, Cox v. Brazo*, 165 Ga. App. 888, 889, 303 S.E.2d 71, 73, <u>aff'd,</u> 251 Ga. 491, 307 S.E.2d 474 (1983). The Complaint outlines in detail that not only did Defendants Shook and Oakes have actual knowledge of the sexual misconduct, battery and harassment committed by Defendant Young against Plaintiff, but they were both directly involved in investigating his misconduct, protecting his professional reputation, and inflicting additional harm upon Plaintiff even after Defendant Young was separated.

## CONCLUSION

For the foregoing reasons, and all those to be presented at the hearing on this Motion, Plaintiff respectfully requests that this Court deny Defendants Shook's and Oakes' Motion in its entirety, allowing for the allegations to be fully heard and adjudicated on their merits.

Respectfully submitted this 16th day of July 2024

 */s/ Frederica Joy White*
Frederica Joy White
GA Bar No. 753400

The White Legal Group LLC
1450 W Peachtree Street NW
#200 PMB 56702
Atlanta, Georgia 30309

Phone: (404) 394-8344
Email: jwhite@thewhitelegalgroup.com

*Attorneys for Plaintiff Haley Cole*

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

HALEY COLE,                                        )
                                                  )
        Plaintiff,                                )        JURY TRIAL DEMANDED
                                                  )
v.                                                )
                                                  )        CIVIL ACTION FILE
ACCENTURE, LLP and                                )        1:24-CV-01897-MHC-JKL
LAWRENCE CHRISTOPHER                              )
YOUNG, ELLYN SHOOK, and                           )
RYAN OAKES in their individual                    )
and professional capacities,                      )
                                                  )
        Defendants.                               )
_____)

## CERTIFICATE OF COMPLIANCE

Pursuant to Local Rule 7.1(D), I hereby certify that the foregoing complies

with the font and point selection approved by this Court in Local Rule 5.1(B).

                                        /s/ Frederica Joy White
                                        Frederica Joy White
                                        Georgia Bar No. 753400

## CERTIFICATE OF SERVICE

I hereby certify that, on July 16, 2024, I electronically filed the foregoing

**PLAINTIFF'S OPPOSITION TO DEFENDANTS ELLYN SHOOK AND**

**RYAN OAKES'S MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED**

28

**COMPLAINT AND MEMORANDUM OF LAW IN SUPPORT** with the Clerk

of Court using the CM/ECF system, which will send notification of such filing and

effectuate service to all counsel of record in this matter, pursuant to Local Rule 5.1.

*/s/ Frederica Joy White*
Frederica Joy White
Georgia Bar No. 753400

**THE WHITE LEGAL GROUP LLC**
1450 W. Peachtree Street, N.W.
#200, PMB 56702
Atlanta, Georgia 30309
Telephone: (404) 394-8344
Email: jwhite@thewhitelegalgroup.com